Slip Op. 18-19

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| QUIEDAN COMPANY,<br><br>    **Plaintiff,**<br><br>v.<br><br>UNITED STATES,<br><br>    **Defendant,**<br><br>and<br><br>REBAR TRADE ACTION COALITION,<br><br>    **Defendant-Intervenor**. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 16-00275 |

## OPINION

[Sustaining the U.S. Department of Commerce's final scope ruling on agricultural training stakes made of steel concrete reinforcing bar from the People's Republic of China and the issuance of instructions to U.S. Customs and Border Patrol to continue suspension of liquidation of all entries.]

Dated: March 9, 2018

Ned H. Marshak, Andrew T. Schutz, Heather C. Litman, and Jordan C. Kahn, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, N.Y., Washington, D.C., and Los Angeles, CA, for Plaintiff Quiedan Company.

Jessica L. Cole and Margaret J. Jantzen, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. Jessica M. Link, Of Counsel, U.S. Department of Commerce, of Washington, D.C., for Defendant United States. With them on the brief were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and L. Misha Preheim, Assistant Director. Of Counsel on the brief was Christopher P. Hyner, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

John R. Shane, Alan H. Price, Maureen E. Thorson, Jeffery O. Frank, and Cynthia C. Galvez, Wiley Rein LLP, of Washington D.C., for Defendant-Intervenor Rebar Trade Action Coalition.

Choe-Groves, Judge:  This case involves a scope ruling on Chinese-produced agricultural and horticultural stakes used to train grape vines.  Before the court is a motion for judgment on the agency record contesting an affirmative final scope ruling issued by the U.S. Department of Commerce ("Commerce" or "Department") regarding agricultural training stakes made of steel concrete reinforcing bar ("rebar") from the People's Republic of China ("China") imported by Plaintiff Quiedan Company ("Plaintiff" or "Quiedan").  See Pl. Quiedan Co.'s Rule 56.2 Mot. J. Agency R., May 12, 2017, ECF No. 27 ("Pl.'s Br."); see also Antidumping Duty Order on Steel Concrete Reinforcing Bars from the People's Republic of China: Final Scope Ruling on Agricultural Training Stakes, PD 15, bar code 3526397-01 (Nov. 22, 2016) ("Final Scope Ruling").  Plaintiff challenges Commerce's determination that Quiedan's goods are within the scope of the antidumping duty order on rebar from China and several other countries ("Order"), as well as the instructions to U.S. Customs and Border Protection ("Customs") to assess antidumping duties retroactively on Plaintiff's unliquidated entries.  See Pl.'s Br. 6–7. Defendant-Intervenor Rebar Trade Action Coalition ("RTAC"), the petitioner in the original antidumping investigation, supports the Final Scope Ruling.  See Def.-Intervenor Rebar Trade Action Coalition's Resp. Br., July 26, 2017, ECF No. 37 ("RTAC Br.").

For the reasons discussed below, the court concludes that the Department's scope determination is supported by substantial evidence and in accordance with the law.  The court concludes also that Commerce did not err in issuing instructions to Customs to continue suspending liquidation of and assessing duties on entries prior to November 22, 2016, the date that Commerce issued its Final Scope Ruling.

**BACKGROUND**

Commerce published an antidumping order on rebar from China on September 7, 2001.

Steel Concrete Reinforcing Bars From Belarus, Indonesia, Latvia, Moldova, People's Republic

of China, Poland, Republic of Korea and Ukraine, 66 Fed. Reg. 46,777 (Dep't Commerce Sept.

7, 2001) (antidumping duty orders) ("Order"). The scope of the Order describes the subject

merchandise as follows:

> [T]he product covered is all steel concrete reinforcing bars (rebar) sold in straight
> lengths, currently classifiable in the Harmonized Tariff Schedule of the United
> States (HTSUS) under item number 7214.20.00 or any other tariff item number.
> Specifically excluded are plain rounds (i.e., non-deformed or smooth bars) and
> rebar that has been further processed through bending or coating. HTSUS
> subheadings are provided for convenience and Customs purposes. The written
> description for the scope of this proceeding is dispositive.

Id.

Plaintiff filed a scope ruling request on May 6, 2016 seeking a determination from

Commerce that its agricultural training stakes "are excluded from and/or outside the scope of"

the Order. Quiedan Company: Agricultural Training Stakes Scope Ruling Request at 1, PD 1,

bar code 3467055-01 (May 6, 2017) ("Scope Ruling Req."). Quiedan described its merchandise

as "finished products that are designed, manufactured, and dedicated for use in

agricultural/horticultural pursuits." Id. at 2. "Specifically, the Training Stakes consist of steel

concrete reinforcing bar ('rebar') that is further processed to form 4 to 5 foot stakes according to

growers' specifications with a sharp point at one end." Id. Quiedan stated that the stakes are

used to "train" grape vines and other plants, aiding in their vertical growth and vitality. See id.

at 2–3. Plaintiff requested that its merchandise be excluded from the Order as "further

processed" rebar. See id. at 2. Alternatively, Quiedan argued that its merchandise is not subject

to the order because the stakes are angled at the tip and are no longer straight lengths. See id.

Quiedan contended also that its merchandise fell outside the scope of the Order because the

stakes are not straight-length rebar, but are separate goods described as "merchant bar." See id.

at 9.

RTAC filed its opposition to Quiedan's Scope Ruling Request on May 26, 2016, arguing

that the agricultural stakes fall within the plain language of the scope order. See Opposition to

Quiedan's Scope Exclusion Request for Agricultural Training Stakes at 1, PD 6, bar code

3473522-01 (May 26, 2016).

Commerce issued its Final Scope Ruling on November 22, 2016, finding that "the

training stakes imported by Quiedan are covered by the scope of the Order." Final Scope Ruling

at 2. Concluding that the stakes meet the "physical description of the merchandise," Commerce

stated that Quiedan's stakes are rebar that are "neither smooth, nor further worked through

bending or coating, and thus do not fall within the category of specifically excluded

merchandise." Id. at 5 (footnotes omitted). Commerce found that Quiedan's stakes comported

with the descriptions of the subject merchandise provided in the petition and the Second Sunset

Review conducted by the U.S. International Trade Commission ("ITC"). Id.; see also Steel

Concrete Reinforcing Bar from Belarus, China, Indonesia, Latvia, Moldova, Poland, & Ukraine

at I-25, USITC Pub. 4409, Inv. Nos. 731-TA-873-875, 878-880, and 882 (July 2013) ("ITC

Second Sunset Rev."). The Department instructed Customs to continue suspending liquidation

of Quiedan's entries that were imported prior to the publication of the Final Scope Ruling. See

Pl.'s Br. at Attach. 1.

In this matter, Quiedan challenges the Department's decision that the company's agricultural training stakes are within the scope of the Order. See Pl.'s Br. 6. Quiedan argues that the Department's refusal to initiate a formal scope inquiry with regard to the training stakes is unsupported by substantial evidence and not in accordance with the law. See id. at 6. The United States ("Defendant") defends the Department's finding in the Final Scope Ruling. See Def.'s Opp'n Pl.'s Rule 56.2 Mot. J. Agency R. 2, July 25, 2017, ECF No. 35 ("Def.'s Opp'n"). RTAC supports the Department's finding in the Final Scope Ruling. See RTAC Br. 7. Quiedan filed its reply in support of the contentions made in its Rule 56.2 brief. See Pl.'s Reply Gov't & Pet'r's Opp'n Pl.'s Rule 56.2 Mot. J. Agency R., Aug. 24, 2017, ECF No. 40 ("Pl.'s Reply"). Plaintiff filed an unopposed motion for oral argument, which was denied because the court concluded that the written submissions alone are sufficient for the court to render its decision. See Unopposed Mot. Oral Arg., Aug. 30, 2017, ECF No. 43; Order, Oct. 2, 2017, ECF No. 45. Plaintiff filed a notice of supplemental authority on August 30, 2017. See Notice Suppl. Auth., Aug. 30, 2017, ECF No. 44.

Quiedan also contests the Department's instructions to Customs to suspend liquidation of, and assess antidumping duties on, unliquidated entries of Quiedan's stakes that were entered into the United States prior to the Department's issuance of its Final Scope Ruling. See Pl.'s Br. 7. Defendant argued initially that the court lacked jurisdiction over Quiedan's challenge to the Department's instructions to Customs. See Def.'s Opp'n 20–21. Plaintiff requested in its reply brief that the court grant leave to amend Plaintiff's complaint to properly assert jurisdiction over the issue. See Pl.'s Reply 16. The court allowed the Defendant and Defendant-Intervenor to file a response to Plaintiff's request. See Letter Filed by the Hon. Jennifer Choe-Groves, Oct. 27,

2017, ECF No. 47.  The two Parties filed a joint response stating that they did not object to Plaintiff's request.  See Joint Resp. Request Am. Compl., Nov. 8, 2017, ECF No. 48.  The court ordered Plaintiff to amend its complaint, which Plaintiff filed on November 29, 2017, and directed the Parties to submit supplemental briefing regarding the Department's instructions to Customs.  See Order, Nov. 15, 2017, ECF No. 49; Am. Compl., Nov. 29, 2017, ECF No. 50.  All Parties filed additional briefs.  See Pl.'s Supp. Br., Nov. 29, 2017, ECF No. 51 ("Pl.'s Supp. Br."); Def.-Intervenor Rebar Trade Action Coalition's Resp. Pl.'s Supp. Br. & Am. Compl., Dec. 20, 2017, ECF No. 56; Def.'s Resp. Pl.'s Supp. Br., Dec. 20, 2017, ECF No. 58 ("Def.'s Supp. Br."); Pl.'s Reply Gov't & Pet'r's Resp. Pl.'s Supp. Br., Jan. 5, 2018, ECF No. 60 ("Pl.'s Supp. Reply Br.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012).[1]  Under Section 516A(b)(1)(B)(i) of the Tariff Act of 1930, as amended, the court will sustain a decision by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i) (2012);[2] see also NSK Ltd. v. United States, 510 F.3d 1375, 1379 (Fed. Cir. 2007).  "'Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  A.L. Patterson, Inc. v. United States, 585 Fed. Appx. 778, 781–82 (Fed. Cir. 2014) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).

---

[1] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

With respect to Commerce's suspension of liquidation instructions to Customs, the court has jurisdiction under 28 U.S.C. § 1581(i)(4).  This provision encompasses issues related to the "administration and enforcement" of antidumping duty investigations.  See id.  The court looks to 28 U.S.C. § 2640(e) when evaluating claims brought under this section, which directs the court to utilize the standard of review set forth in the Administrative Procedure Act, as amended.  The court will uphold an agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A) (2012).  Under this standard, an agency acted in an arbitrary and capricious manner if it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also Al. Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (stating the same).

## DISCUSSION

### I.    The Department's Scope Determination

Quiedan argues that the Department's determination in the Final Scope Ruling is unsupported by substantial evidence and is otherwise contrary to the law.  See Pl.'s Br. 20. Plaintiff contends that its argument is supported by the plain meaning of the scope language and the factors specified in 19 C.F.R. § 351.225(k)(1) (2016)[3] ("(k)(1) factors").  See id.  Quiedan argues also that the court should remand the matter to Commerce in order to conduct a scope

---

[3] Further citations to Title 19 of the Code of Federal Regulations are to the 2016 edition.

inquiry and engage in an analysis of the factors listed in 19 C.F.R. § 351.225(k)(2) ("(k)(2) factors"). See id. at 6, 24. Defendant submits that Commerce was not required to conduct a formal scope inquiry because the scope determination based on the plain meaning of the scope language and the (k)(1) factors is supported by substantial evidence and in accordance with the law. See Def.'s Opp'n 2.

Whether an importer's merchandise is subject to an antidumping duty order depends on the scope language used to define the merchandise, which may lead to issues "because the descriptions of the subject merchandise contained in the Department's determinations must be written in general terms." 19 C.F.R. § 351.225(a). Commerce is authorized to issue "scope rulings" that "clarify the scope of an order." Id.

The first step in determining whether an importer's merchandise is subject to an antidumping duty order is for Commerce to look to the plain language of the order. See Duferco Steel Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002) ("[A] predicate for the interpretive process is language in the order that is subject to interpretation."). If Commerce determines that the scope language in the order is unambiguous with regard to the merchandise in question, it explains the plain meaning of the scope language and the ruling ends there. See ArcelorMittal Stainless Belg. N.V. v. United States, 694 F.3d 82, 84 (Fed. Cir. 2012). Commerce may continue its analysis by examining the submitted application, the description of the merchandise, and the (k)(1) factors, which include the description of the merchandise contained in the petition, the initial investigation, prior scope determinations, and prior determinations issued by the ITC. See 19 C.F.R. § 351.225(d), (k)(1). The interpretive analysis

ends if Commerce finds that the descriptions of the merchandise from these sources and the

scope language are dispositive.[4]

Commerce must determine within forty-five days of receiving a scope ruling request

from an interested party whether the merchandise is within the scope based on these factors, or

conduct a formal scope inquiry under 19 C.F.R. § 351.225(e).  19 C.F.R. § 351.225(c)(2).  The

court provides Commerce with deference in interpreting and clarifying an antidumping duty

order.  See Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed.

Cir. 1995) (citing Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990)).

Commerce cannot change, however, the scope of an order or "interpret an order in a manner

contrary to its terms."  Walgreen Co. of Deerfield, Ill. v. United States, 620 F.3d 1350, 1354

(Fed. Cir. 2010) (citing Duferco, 296 F.3d at 1095).

Here, Commerce issued its decision on Quiedan's agricultural training stakes pursuant to

"the language of the Order, the description of the product contained in this scope-review request,

and other sources pursuant to 19 C.F.R. § 351.225(k)(1)."  Final Scope Ruling at 5.  Commerce

concluded that "Quiedan's training stakes meet the physical description of the merchandise

identified in the scope of the Order;" that the goods were "neither smooth, nor further worked

through bending or coating," which prevented them from falling "within the category of

---

[4] When the scope language and the sources considered under the (k)(1) factors are not dispositive, Commerce may consider the (k)(2) factors, which are derived from the factors articulated in Diversified Prods. Corp. v. United States, 6 CIT 155, 162, 572 F. Supp. 883, 889 (1983).  These factors are: (1) the "physical characteristics of the product," (2) the "expectations of the ultimate purchasers," (3) the "ultimate use of the product," (4) the "channels of trade in which the product is sold," and (5) the "manner in which the product is advertised and displayed."  19 C.F.R. § 351.225(k)(2).

specifically excluded merchandise;" and that the goods comport "with the physical description of the merchandise RTAC discussed in its original Petition, and in the ITC Second Sunset Review." Id. at 5 (footnotes omitted).  Commerce stated that it found "it unnecessary to consider the additional factors specified in 19 C.F.R. 351.225(k)(2) *[sic]*."  Id. (footnote omitted).  For the reasons discussed below, the court sustains the Department's decision as supported by substantial evidence.

### A.  The Department's Analysis

Quiedan's Scope Ruling Request describes Quiedan's agricultural training stakes as "steel concrete reinforcing bar ('rebar') that is further processed to form 4 to 5 foot stakes according to growers' specifications with a sharp point at one end."  Scope Ruling Req. at 2. Plaintiff portrays the stakes as "finished products that are designed, manufactured, and dedicated for use in agricultural/horticultural pursuits," specifically to "'train' grape vines in vineyards as well as other types of plants" to aid in their development.  Id. at 2–3.  To produce the training stakes, Quiedan states that a Chinese fabricator takes coiled rebar and feeds it through a machine "that cuts and straightens the rebar into 4 and 5 foot sections."  Id. at 3.  The rebar is then put into a stamping machine to form a point, after which it is put into another stamping machine to remove burrs from the point.  Id.

In the Final Scope Ruling, Commerce concluded that Quiedan's stakes were within the scope of the Order, noting that the stakes were "non-alloy steel, hot rolled or hot drawn not further worked" steel concrete reinforcing bars.  Final Scope Ruling at 5.  Commerce found that Quiedan demonstrated that "its training stakes are neither smooth, nor further worked through bending or coating" post-fabrication processing that would exempt the stakes from the Order.  Id.

(footnotes omitted).  Commerce determined also that Quiedan's stakes comported with the physical descriptions of the subject merchandise in the original petition and the ITC Second Sunset Review.  See id.

Commerce first considered Quiedan's argument that the training stakes did not meet the terms of the scope language because a training stake is pointed at the end and therefore no longer "straight through its length."  Final Scope Ruling at 6.  Citing Merriam-Webster Dictionary, the Department defined straight as "generated by a point moving continuously in the same direction and expressed by a linear equation."  Id. (footnote omitted).  Commerce compared this definition to Quiedan's subject merchandise, noting that "[f]rom the tip of the point to the center of the butt end, Quiedan's rebar continuously moves in the same direction on the same plain *[sic]*, and the bar is objectively straight from end to end."  Id.  Commerce found it immaterial that Quiedan had stamped the tip of the rebar to form a point to make the stake easier to place into the ground, determining that "this point is technically composed of multiple angles" and "does not change the fundamental character of the bar as being straight through its length."  Id. (footnote omitted).  Based on these conclusions, the Department found that Quiedan's merchandise is straight and therefore not excluded from the Order.

Commerce determined next whether the stamping process to form the stake's pointed angle constituted further processing that would exclude the stakes from the Order.  See id.  The Department first clarified that, as defined by the scope of the Order, "further processing" is limited to either "bending" or "coating" the rebar.  Id.  Commerce again looked to Merriam-Webster Dictionary, which defines bending as "the use of force to cause something, such as a wire or pipe to become curved."  Id. (footnote omitted).  Curving, in turn, requires "a turn,

change, or deviation from a straight line or plane surface without sharp breaks or angularity." Id. (footnote omitted). The Department noted that "Quiedan's manufacturer grinds the rebar using sharp angles to create a tip," but concluded that such a process "does not qualify as bending." Id. Instead, the Department found that the training stakes "follow the same linear direction" and have "no deviation from a straight line," indicating that the subject products were the type of rebar sold in "straight lengths" contemplated by the Order. Id. Commerce concluded further that there was no record evidence suggesting that the training stakes were coated. Id. Commerce thus determined that the training stakes did not meet the "bending" or "coating" fabrication exclusions of the scope language based on these observations.

Finally, Commerce rejected Quiedan's contention that its training stakes are exempt from the Order because they constitute "merchant bars." Id. at 7. The ITC Second Sunset Review states that some "U.S. rebar producers produce additional products using the same equipment, machinery, and production workers that are used to produce straight-length rebar." ITC Second Sunset Rev. at I-25. These products include "merchant bars," which are described as bars with "round, square, flat, angled, and channeled cross sections" that are "used by fabricators and manufacturers to produce a variety of products, including steel floor and roof joists, safety walkways, ornamental furniture, stair railings, and farm equipment." Id. Noting that there is no record evidence demonstrating that sharpening rebar to a point at one end converts it into a merchant bar, Commerce rejected the notion that "the slight change in appearance of the rebar that has been stamped to a point and deburred changes the character of the deformed rebar to such a degree that it becomes merchant bar." Final Scope Ruling at 7.

The Department recognized also that it had previously determined that the scope of the Order covers "all rebar . . . and contains no requirement or exception for the end usage." Id. (discussing Antidumping Duty Order on Steel Concrete Reinforcing Bars from the People's Republic of China: Transmittal of Source Documents Referenced to the File at Attach. 2, PD 16, bar code 3526853-01 (Jan. 19, 2012)). Commerce noted that Quiedan's Scope Ruling Request did not "assert that the end use or the length of its training stakes be taken into consideration for the purposes of the Department's finding in the instant proceeding." Id. Commerce determined that Quiedan's stakes are not merchant bars based on the record evidence before it.

### B. Plaintiff's Challenges to the Final Scope Ruling

#### 1. *Plaintiff's Contention that its Merchandise is Outside the Scope of the Order*

Plaintiff challenges the Department's findings before the court for several reasons. Plaintiff argues that the training stakes cannot be considered "steel concrete reinforcing bars sold in straight lengths" because the goods are not straight, but "have pointed, angled ends." Pl.'s Br. 23. Plaintiff argues that Commerce ignored the definition of "straight" from Merriam-Webster Dictionary placed on the record by the Department when it defined straight as "free from curves, bends or angles or irregularities." Id. (citing Antidumping Duty Order on Steel Concrete Reinforcing Bars from the People's Republic of China: Transmittal of Source Documents Referenced to the File at Attach. 1, PD 16, bar code 3526853-01 (Dec. 5, 2016)). Plaintiff avers that the stakes are not straight because they are pointed or angled. See id.

Quiedan's argument ignores, however, additional definitions of the term "straight" from Merriam-Webster Dictionary that were placed on the record, including one definition of straight as "generated by a point moving continuously in the same direction and expressed by a linear

equation." Antidumping Duty Order on Steel Concrete Reinforcing Bars from the People's Republic of China: Transmittal of Source Documents Referenced to the File at Attach. 1, PD 16, bar code 3526853-01 (Dec. 5, 2016). By that definition, Quiedan's training stakes are straight regardless of the pointed end because, from end to point, the stake continuously moves along the same direction. This is the definition of "straight" that Commerce used in determining that the training stakes are subject to the Order. See Final Scope Ruling at 6. While Quiedan's alternative definition of "straight" may be plausible, it is the court's obligation to assess whether the Department's interpretation that the training stakes are within the scope of the Order is reasonable and supported by substantial evidence. See 19 U.S.C. § 1516a(b)(1)(B)(i). The court is not persuaded by Plaintiff's argument, and the court concludes that the Department's interpretation of "straight" as moving continuously in the same direction with respect to the training stakes at issue is a reasonable interpretation based on the evidence in the record.

Plaintiff argues also that Quiedan's merchandise is not subject to the Order based on the plain language and the (k)(1) factors. See Pl.'s Br. 20. Plaintiff contends that the term "rebar" is not defined in the scope language and, as a result, the court "should consider the common meaning of the term rebar, the context and trade usage of this term, and then the factors specified in 19 C.F.R. § 351.225(k)(1)." Id. Citing Merriam-Webster Dictionary, Plaintiff states that the common meaning of rebar is "a steel rod with ridges for use in reinforced concrete." Id. Plaintiff avers that "the scope of the Rebar Order is limited to a steel rod with ridges which is used for a particular purpose; that is, to reinforce concrete." Id. Plaintiff's argument fails, however, based on the plain language of the Order and the (k)(1) sources.

First, the scope language of the Order does define rebar. The Order states that the subject merchandise includes "all steel concrete reinforcing bars (rebar) sold in straight lengths," Order, 66 Fed. Reg. at 46,777, making Plaintiff's resort to a dictionary definition unnecessary. See Meridian Prods., LLC v. United States, 851 F.3d 1375, 1382 (Fed. Cir. 2017) (quoting Duferco, 296 F.3d at 1097) ("Although a party's description of merchandise in [the (k)(1)] sources may aid Commerce in making its determination, that description 'cannot substitute for language in the order itself' because '[i]t is the responsibility of [Commerce], not those who [participated in] the proceedings, to determine the scope of the final orders.'").

Second, Quiedan's Scope Ruling Request belies its argument that, because its training stakes "have been further processed into a product which will be used as an agricultural stake, and not to reinforce concrete, this product no longer falls within the common meaning of the term 'rebar.'" Pl.'s Br. 20. The Scope Ruling Request states that "the training stakes consist of steel concrete reinforcing bar ('rebar');" thus, Plaintiff is defining its merchandise as rebar itself. Scope Ruling Req. at 2. For Plaintiff to argue otherwise in its briefing contradicts its own submission before Commerce.

Plaintiff argues that its training stakes do not meet the definition of "rebar" because of their size and use, "factors which the Department is required to consider in its scope analysis; especially here where rebar has a common and well-defined purpose and use considered by the ITC in its analysis." Pl.'s Br. 21. Quiedan discusses the ITC Reports on the record, which Plaintiff argues "unequivocally reveal that rebar is used solely to reinforce concrete." Id. According to the First Sunset Review of the Order, however, all six Commissioners found in the original antidumping duty investigation that rebar is "*primarily* used for the reinforcement of

concrete structures." First Review on Steel Concrete Reinforcing Bar from Belarus, China, Indonesia, Korea, Latvia, Moldova, Poland, and Ukraine at 24, USITC Pub. No. 3933, Inv. Nos. 731-TA-873–875, 877–880, and 882 (July 2007) ("ITC First Sunset Rev.") (emphasis added). While Plaintiff's rebar is not being used for rebar's primary purpose, it does not cease to be rebar subject to the Order based on this factor alone. Plaintiff's argument that its product does not meet the definition of rebar therefore fails.

Quiedan argues that its "product is used exclusively in the agricultural and farming industry" and should be considered merchant bar, which Plaintiff defines as outside the scope of the Order.[5] Pl.'s Br. 22. As discussed above, merchant bar is mentioned in the ITC Second Sunset Review as one of the "additional products" produced by "[s]ome U.S. rebar producers" using the same "equipment, machinery, and production workers that are used to produce straight-length rebar." ITC Second Sunset Rev. at I-25. The ITC states that merchant bar products "include bars with round, square, flat, angled, and channeled cross sections" and can be used "by fabricators and manufacturers to produce a variety of products, including . . . farm equipment." Id.

---

[5] Quiedan contends that remand is justified because Commerce, in a footnote to the Final Scope Ruling, mistakenly used the description of a "merchant bar" found in the ITC Second Sunset Review to define the subject merchandise. See Pl.'s Br. 22 (citing Final Scope Ruling at 5 n.31). In addressing Quiedan's argument that its training stakes are merchant bars and not subject merchandise, however, Commerce does not conflate the two descriptions, and explains its findings that Quiedan's training stakes are subject merchandise and not merchant bars. See Final Scope Ruling at 7. As a result, the Department's minor error in its footnote did not influence its decision and is not a justified reason for remand.

The ITC Second Sunset Review appears to be one of three documents on the record that discusses and defines the term "merchant bar."[6] The other two sources are webpages attached to Quiedan's Scope Ruling Request. See Scope Ruling Req. at Attach. 3. The first webpage, from merchant bar producer Steel Dynamic's Roanoke Bar Division, states that its merchant bars "are typically used in light commercial construction, joist manufacturing, industrial/commercial fabrication, and in the manufacturing process of trailers and other heavy equipment." Id. The second webpage, from merchant bar producer Infra-Metal, describes the products as "[a] group of commodity steel shapes that consist of rounds, squares, flats, strips, angles and channels, which fabricators, steel service centers and manufacturers cut, bend and shape into products." Id. The Infra-Metal webpage notes that "[m]erchant products require more specialized processing than reinforcing bar." Id. This evidence suggests that merchant bars are processed more than the subject merchandise, contain a variety of different cross-sections, and are cut, bent, or shaped in a fabrication process, including in the fabrication of farm equipment. While this information is pertinent to defining a merchant bar, it does not overcome the Department's conclusion that Quiedan's training stakes are subject to the Order.

The Court of Appeals for the Federal Circuit has stated that the (k)(1) factors are helpful in determining whether merchandise is within the scope of an Order, but cannot substitute for the plain language of the Order itself. See Meridian Prods., LLC, 851 F.3d at 1382. While

---

[6] The ITC First Sunset Review mentions merchant bars as well, but does not define or discuss these products in any detail. See ITC First Sunset Rev. at I-23 (stating that U.S. rebar producers make additional products, including "merchant and special-quality (SBQ) bars, and fence and sign posts.").

Quiedan's training stakes could arguably be considered "farming equipment" that was further fabricated from rebar (i.e., a stamping and deburring process to create a point at one end), this evidence alone does not remove it from the scope of the Order. "[E]ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." King Supply Co., LLC v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (citing Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001)). Commerce found that Quiedan's training stake is a straight, non-plain round length piece of rebar from end to tip and contains no bending or coating, which is the only further processing that would remove such straight length rebar from the scope of the Order according to the scope language. See Final Scope Ruling at 5. Commerce's conclusion, while perhaps not the only one that can be drawn from the record evidence, is supported nonetheless by substantial evidence.

Based on the record evidence, the description of the goods, and the descriptions of subject merchandise contained within the (k)(1) sources, the court concludes that the Department's decision is reasonable and supported by substantial evidence. The court sustains the Department's decision that the training stakes are within the scope of the Order.

> 2. *Plaintiff's Contention that Commerce Should Have Engaged in a Formal Scope Inquiry*

Plaintiff contends that the court should remand the instant matter because Commerce failed to conduct a formal scope inquiry. See Pl.'s Br. 24. If Commerce cannot reach a finding of whether the merchandise is within the scope of an order by means of the plain scope language and the (k)(1) factors (i.e., the petition, the initial investigation, and previous determinations of Commerce and the ITC) within forty-five days of receiving the scope ruling request, it may

initiate a formal scope inquiry. 19 C.F.R. § 351.225(c)(2), (e). In a formal scope inquiry, Commerce assesses the (k)(1) factors and may also consider the (k)(2) factors, such as the physical characteristics of the product, the expectations of the ultimate purchaser, and the channels of trade in which the product is sold, to a name a few. See 19 C.F.R. § 351.225(e), (k). Plaintiff argues that Commerce could not have reached a decision that its training stakes are within the scope of the Order based on the scope language and the (k)(1) factors and, thus, should have at least initiated a formal scope inquiry to assess the issue further. See Pl.'s Br. 24–27. Plaintiff urges the court to remand the decision on this basis. Id.

Plaintiff reiterates essentially the same arguments it has already made that the court is rejecting: that the training stakes are "merchant bars" excluded from the scope, that the training stakes are not covered by the Order because they are not "concrete reinforcing," and that the training stakes have different physical characteristics (i.e., a sharpened point) and a different use (i.e., training plants and vines) than rebar. See id. at 25–27. Plaintiff argues that these factors indicate that "the Department erred in its decision that the K-1 factors 'are dispositive on the question whether' Plaintiff's *Training Stakes* are covered by the Rebar Order." Id. at 27. For the same reasons articulated above, Quiedan has not persuaded the court that a formal scope inquiry is warranted in this case. The court concludes that the Department's decision that the training stakes are within the scope of the Order according to the plain meaning of the scope language and the (k)(1) factors is supported by substantial evidence and in accordance with the law.

Plaintiff argues that its training stakes merited a full scope inquiry based on the complexity of issues that necessitated the extension of time for Commerce to make its determination. See id. In particular, Quiedan notes that "[o]n four separate occasions,

Commerce extended its deadline for a scope ruling determination because the issues presented were so 'complex' that it could not issue a decision within the mandated 45 days under 19 C.F.R. § 351.225(c)(2)." Id. Quiedan asserts that "[i]f this Rebar Order was unambiguous and the language so clear that the *Training Stakes* fall within the plain language, Commerce would have not required so many extensions." Id. Plaintiff cites nothing to support this proposition. To the contrary, Commerce may extend a time limit for good cause, unless expressly precluded by statute. 19 C.F.R. § 351.302(b). Commerce stated in each of its extensions that it sought to extend the deadline because of "the complexity of the request and comments received." See Letter re: Steel Concrete Reinforcing Bars from the People's Republic of China, PD 9, bar code 3493156-01 (Aug. 1, 2016); Letter re: Steel Concrete Reinforcing Bars from the People's Republic of China, PD 11, bar code 3507652-01 (Sept. 20, 2016); Letter re: Steel Concrete Reinforcing Bars from the People's Republic of China, PD 14, bar code 3518785-01 (Nov. 2, 2016). The court is not persuaded by Plaintiff's argument that the Department's need for extensions required Commerce to engage in a full scope inquiry.

II.    **The Department's Instructions to Suspend Liquidation Retroactively**

Plaintiff contests the Department's instructions to Customs to continue suspension of liquidation of all entries of steel concrete reinforcing bars from China subject to the Order, including Quiedan's training stakes. See Pl.'s Br. 28. Quiedan contends that these instructions should have been limited to only those goods that entered the United States after November 22, 2016, the date of the issuance of the Final Scope Ruling, and are therefore contrary to law. See id. Defendant disagrees, arguing that the Department's instructions to Customs were proper under 19 C.F.R. § 351.225. See Def.'s Opp'n 21; Def.'s Supp. Br. 2–3.

19 C.F.R. § 351.225(l)(3) states clearly that when the Department issues a final scope ruling and finds that the "product in question is included within the scope of the order, any suspension of liquidation . . . will continue." If the Department finds that the final scope ruling encompasses a particular product, but an ambiguity existed as to whether the products were subject to an antidumping duty order at the outset, then suspension of liquidation instructions should be limited to entries imported on or after the date of initiation of the scope inquiry. See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 38 CIT __, __, 961 F. Supp. 2d 1291, 1304 (2014) ("Where . . . a scope ruling confirms that a product is, and has been, the subject of an order, the Department has not acted beyond its authority by continuing the suspension of liquidation of the product.").

As stated above, the Department correctly found that Quiedan's training stakes fell unambiguously within the scope of the Order. Because no ambiguity existed, the products were subject to the liquidation instructions for the entire investigatory period, and the Department's issuance of instructions to Customs properly followed 19 C.F.R. § 351.225(l)(3). Plaintiff concedes that if the court holds that its products "fall within the Rebar Order's scope based solely upon the words of the Orders and the physical characteristics of the merchandise, then [antidumping duties] can be asserted retroactively." Pl.'s Supp. Br. 5; see also Pl.'s Supp. Reply Br. 3. Because the Department adhered to its regulation and relevant case law, the court concludes that the Department's issuance of instructions was not arbitrary and capricious, and that the Department acted in accordance with the law.

**CONCLUSION**

For the foregoing reasons, the court concludes that the Department's Final Scope Ruling is supported by substantial evidence and in accordance with the law.  Therefore, pursuant to the foregoing:

(1) the court denies Plaintiff's motion for judgment on the agency record;

(2) the court denies Plaintiff's request to remand the matter with instructions for Commerce to issue a determination excluding the agricultural training stakes from the scope of the order or, in the alternative, to initiate a formal scope inquiry under the (k)(2) factors; and

(3) the court denies Plaintiff's request with respect to the retroactive suspension of liquidation and upholds Commerce's instruction to Customs to retroactively suspend liquidation and assess duties on entries of Plaintiff's shipments of agricultural training stakes entered prior to the issuance of Commerce's November 22, 2016 Final Scope Ruling.

Judgment will be entered accordingly.


/s/   Jennifer Choe-Groves
Jennifer Choe-Groves, Judge


Dated: March 9, 2018
       New York, New York