# United States Court of Appeals for the Federal Circuit

---

**QUIEDAN COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, REBAR TRADE ACTION COALITION,**
*Defendants-Appellees*

---

2018-1962

---

Appeal from the United States Court of International Trade in No. 1:16-cv-00275-JCG, Judge Jennifer Choe-Groves.

---

Decided: July 2, 2019

---

KAVITA MOHAN, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, Washington, DC, argued for plaintiff-appellant. Also represented by JORDAN CHARLES KAHN, ANDREW THOMAS SCHUTZ; NED H. MARSHAK, New York, NY.

TARA K. HOGAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by MARGARET JANTZEN, JOSEPH H. HUNT, JEANNE DAVIDSON, LOREN MISHA PREHEIM; CHRISTOPHER

HYNER, BRENDAN SASLOW, United States Department of
Commerce, Washington, DC.

    JOHN R. SHANE, Wiley Rein, LLP, Washington, DC, ar-
gued for defendant-appellee Rebar Trade Action Coalition.
Also represented by ALAN H. PRICE, JEFFREY OWEN FRANK,
MAUREEN E. THORSON.

---

Before REYNA, WALLACH, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Quiedan Company is an importer of agricultural stakes
produced in the People's Republic of China.  It imports the
stakes for use in training grape vines and other plants.
Each stake is made of steel concrete reinforcing bar (rebar)
by cutting rebar to a length of four to five feet followed by
sharpening one end to a point to ease driving the stake into
the ground.  The United States Department of Commerce
concluded that Quiedan's stakes are clearly within the
scope of an antidumping duty order covering rebar from
China.  We see no substantive or procedural error in that
ruling or in Commerce's continuation of a suspension of liq-
uidation for Quiedan's stakes.  Because the Court of Inter-
national Trade drew the same conclusions, we affirm.

I

On May 6, 2016, Quiedan applied to Commerce, under
19 C.F.R. § 351.225, for a ruling on the scope of an anti-
dumping duty order that covers rebar products from
China—an order first issued in 2001 based on the required
determinations by Commerce and the International Trade
Commission.  *See Steel Concrete Reinforcing Bars from Bel-
arus, Indonesia, Latvia, Moldova, People's Republic of
China, Poland, Republic of Korea and Ukraine*, 66 Fed.
Reg. 46,777 (Sept. 7, 2001) (Rebar Order); *see also Steel
Concrete Reinforcing Bars from Belarus, Indonesia, Latvia,
Moldova, People's Republic of China, Poland and Ukraine:*

*Continuation of Antidumping Duty Orders*, 72 Fed. Reg. 44,830 (Aug. 9, 2007) (Continuation). Under the antidumping duty order (ADD Order), *i.e.*, the Rebar Order as modified by the 2007 Continuation, the "product covered is all steel concrete reinforcing bars (rebar) sold in straight lengths," but "[s]pecifically excluded are plain rounds (*i.e.*, non-deformed or smooth bars) and rebar that has been further processed through bending or coating." *Rebar Order*, 66 Fed. Reg. at 46,777; *see also Continuation*, 72 Fed. Reg. at 46,831. In its application for a scope ruling, Quiedan asked Commerce to determine that its stakes are outside the scope of that definition because, it contended, they are not straight, are further processed through bending, or are so-called merchant bar. The Rebar Trade Action Coalition (RTAC), the sole filer of the petition that led to issuance of the ADD Order, opposed Quiedan's position.

Commerce rejected Quiedan's position. Commerce considered whether the merchandise is within the ADD Order's scope by examining Quiedan's application for the scope ruling and the factors specified in subsection (k)(1)—"[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1). Where analysis based on those considerations answers the scope question, Commerce is to issue "a final ruling" as to scope. 19 C.F.R. § 351.225(d). In this case, Commerce determined that the (k)(1) analysis makes clear that Quiedan's stakes are "within the plain language of the" ADD Order and "not subject to any exclusion." J.A. 145. Commerce therefore issued a scope ruling so stating. J.A. 139–46.

It is undisputed that Customs and Border Protection (CBP) had already been suspending liquidation—the final calculation of duties owed, 19 C.F.R. § 159.1—of entries of Quiedan's stakes, which were facially subject to the ADD Order here. *See Am. Power Pull Corp. v. United States*, 121 F. Supp. 3d 1296, 1300–01 (Ct. Int'l Trade 2015)

(describing process of cash deposits and suspension of entries under an antidumping duty order pending administrative review under 19 U.S.C. § 1675). After Commerce issued its scope ruling confirming coverage of the stakes by the ADD Order, it instructed CBP to continue such suspension, including for entries made before the scope ruling was issued. J.A. 191; *see* 19 C.F.R. § 351.225(*l*) (providing for continuation of suspension of liquidations during and after scope rulings).

Quiedan challenged the scope ruling in the Court of International Trade under 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012) and 28 U.S.C. § 1581(c) (2012), adding an invocation of 28 U.S.C. § 1581(i) (2012) to challenge Commerce's instructions regarding suspension of liquidation. The Court of International Trade rejected Quiedan's challenges and affirmed Commerce's scope ruling and instructions. *Quiedan Co. v. United States*, 294 F. Supp. 3d 1345 (Ct. Int'l Trade 2018). Quiedan timely appealed. We have jurisdiction under 28 U.S.C. §§ 1295(a)(5), 2107, and 2645(c).

II

We review the Commerce decisions at issue de novo, using the same standard of review applied by the Court of International Trade, *see Diamond Sawblades Mfrs. Coal. v. United States*, 866 F.3d 1304, 1310 (Fed. Cir. 2017), while giving "great weight" to the informed view of the Court of International Trade, *Nan Ya Plastics Corp., Ltd. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2015). In reviewing the scope ruling, we ask if the decision is "unsupported by substantial evidence on the record[] or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see Diamond Sawblades*, 866 F.3d at 1310; *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005). In reviewing the continued-suspension instructions challenged in the Court of International Trade under 28 U.S.C. § 1581(i), we apply the standard of review of 5 U.S.C. § 706, which, as relevant here, directs us to ask if

Commerce's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 28 U.S.C. § 2640(e). Applying those standards here, we affirm.

## A

There is no dispute that Quiedan's stakes are made from rebar by cutting a long bar to a desired length and sharpening the result to a point at one end through stamping, followed by removal of burrs from the point. Quiedan makes essentially three substantive arguments that Commerce nonetheless erred in ruling that the stakes are within the ADD Order. We reject all three arguments.

*First*: Quiedan argues that, because of the point at one end, the products are not "sold in straight lengths," as required by the *Rebar Order*, 66 Fed. Reg. at 46,777. Commerce correctly rejected that argument. As a matter of common sense in context, the stakes have a "straight length" notwithstanding the point at one end, just as a pencil has a straight length even when sharpened by whittling.

Commerce explained that "[f]rom the tip of the point to the center of the butt end, Quiedan's rebar continuously" extends "in the same direction," and "the bar is objectively straight from end to end." J.A. 144. Commerce took a practical view suited to the context, explaining that the presence of a point "technically composed of multiple angles[] does not change the fundamental character of the bar as being straight throughout its length." *Id.* (footnote citing pictures of merchandise). The presence of some angles on the stakes by itself is not disqualifying: indeed, rebar, even when not cut to the lengths of Quiedan's stakes, has a roughened surface, necessarily having angles at a visible scale. Although not necessary to Commerce's conclusion, the point at one end of a Quiedan stake (even if not perfectly conical) retains the basic structural feature of practical symmetry about a linear axis running entirely through the stake along its "length." *See* J.A. 26

(photograph).  The view of the stake along its length as a whole is the perspective appropriate to the terminology, "straight lengths."  In the context of the product and the ADD Order's language, Quiedan's stakes must be deemed, at the relevant scale and considered along the "length," as "'without a bend, angle, or curve.'"  *Id.* (quoting Dictionary.com definition).  The stakes thus clearly have a "straight length."

Before Commerce, Quiedan suggested that its stakes, even if they have a "straight length," might be excluded as having been "processed through bending." *See id.* Quiedan does not seem to make any argument in this court that the "processed through bending" exclusion applies if the "sold in straight lengths" requirement is met.  *See* Oral Argument at 5:58–6:15 ("Q: How are they bent? A: Because they're no longer straight.").  Regardless, Quiedan has provided no basis for a conclusion that the stamping-and-burr-removal process could fairly be described as a process of "bending."

*Second*: Quiedan argues that the stakes are excluded from the ADD Order because they are "merchant bar." That term does not appear in the ADD Order, but the International Trade Commission used it, evidently to refer to something different from "rebar" and hence outside the ADD Order, when in 2013 it explained the results of its Second Sunset Review of the Order.  *See Steel Concrete Reinforcing Bar from Belarus, China, Indonesia, Latvia, Moldova, Poland, and Ukraine*, Inv. Nos. 731-TA-873, 731-TA-874, 731-TA-875, USITC Pub. 4409, at I-25 (July 1, 2013) (conducted pursuant to 19 U.S.C. § 1675(c)); J.A. 117.  We conclude that Commerce correctly rejected Quiedan's argument that the stakes at issue are "merchant bar." J.A. 145.

The Commission said that "[m]erchant bar products include bars with round, square, flat, angled, and channeled cross sections, and are used by fabricators and manufacturers to produce a variety of products, including steel

floor and roof joists, safety walkways, ornamental furniture, stair railings, and farm equipment." J.A. 117. Commerce determined that Quiedan's stakes are not "merchant bar," because "there is no record evidence that demonstrates sharpening a piece of deformed rebar to a point transforms it into merchant bar." J.A. 145. Commerce "disagree[d] that the slight change in appearance of the rebar that has been stamped to a point and deburred changes the character of the deformed rebar to such a degree that it becomes merchant bar." *Id*.

Quiedan makes no effort in this appeal to demonstrate that there was any record evidence that merchant bar can result from starting with rebar and simply cutting it and sharpening an end to a deburred point. To the contrary, the Second Sunset Review, which is the sole basis for Quiedan's argument, nowhere suggests that merchant bar can result from rebar in those ways. It says only that merchant bar can be produced using the same equipment that some manufacturers use to make rebar. *See* USITC Pub. 4409, at I-25.

Quiedan observes that, early in the scope ruling here, Commerce said that "the description of the merchandise under consideration also comports with" a description found in the Second Sunset Review, citing and quoting that Review's description of merchant bar. J.A. 143 & n.31. Quiedan's observation about the scope ruling is correct, but it does not undermine Commerce's ruling. What Commerce said was a mistake, and Commerce did not repeat it or rely on it later in its analysis, including in the explanation of why Quiedan's stakes are not merchant bar. We agree with the Court of International Trade that the minor error in Commerce's footnote did not influence the decision and does not justify a remand. *See Quiedan*, 294 F. Supp. 3d at 1355 n.5.

*Third*: Quiedan argues that "rebar" is defined in some way by what it is used for. Specifically, Quiedan suggests

that the intended use of a sharpened length of rebar as an agricultural stake, rather than as support for concrete, makes the stakes not rebar.  We reject this argument.

We have recognized a strong presumption that use conditions must be clear before a Commerce order can properly be construed as making the scope of covered merchandise turn on how an item is used (or intended to be used), rather than what it is.  *See King Supply Co. v. United States*, 674 F.3d 1343, 1349 (Fed. Cir. 2012).  There is no basis for departing from that approach here.  Quiedan supplies no definition of "rebar" that goes beyond indicating how it is generally used.  Such a definition is not enough to exclude a relatively unusual intended or actual use of the same physical product.

Commerce so stated when, in this case, it summarized its 2012 ruling that "the usage of rebar . . . was immaterial to the scope" of the ADD Order.  J.A. 141; J.A. 140–41 (summarizing "Antidumping Duty Order on Steel Concrete Reinforcing Bars from the People's Republic of China; Final Scope Ruling: Steel Pins," dated January 19, 2012).  But Commerce noted that "Quiedan's request does not assert that the end use or length of its training stakes be taken into consideration."  J.A. 145; *see* J.A. 29–30 (Quiedan's Scope Ruling Request) ("Quiedan is not arguing that the mere size or use of its Training Stakes takes them outside the scope of the Rebar Order.  Rather, for the reasons set out below, Quiedan is seeking a scope ruling from [Commerce] confirming that the Training Stakes are excluded and/or outside the scope of the [ADD Order] due to their physical properties and fabrication.").  For that reason, Commerce properly found it unnecessary to rely on its 2012 ruling in this matter.

We have considered Quiedan's remaining arguments and find them unpersuasive.  Quiedan's arguments fail to undermine Commerce's conclusion that the stakes at issue are clearly within the language of the ADD Order,

considering the factors specified in § 351.225(k)(1). We therefore reject Quiedan's substantive challenges to Commerce's scope ruling.

## B

Quiedan has made two additional, related arguments: (1) Commerce should have initiated a formal scope inquiry, and (2) Commerce improperly instructed CBP to continue suspending liquidation on the training stakes, including for entries made before Commerce issued its final scope ruling. Quiedan's briefing seems to accept that neither argument has merit if, as we conclude in agreement with Commerce and the Court of International Trade, there is no genuine ambiguity about the coverage by the antidumping duty order of the merchandise at issue. *See* Appellant Br. 35–36, 41–48; Reply Br. 22, 28. In fact, it is clear that no formal inquiry is required where a (k)(1) analysis is dispositive. *See* 19 C.F.R. § 351.225(d); *AMS Assocs., Inc. v. United States*, 737 F.3d 1338, 1344 (Fed. Cir. 2013). It is similarly clear that continued suspension of liquidation is proper, at least where the scope ruling confirms a clear meaning. *See* 19 C.F.R. § 351.225(*l*); *Sunpreme Inc. v. United States*, 924 F.3d 1198, 1212–15 (Fed. Cir. 2019) (explaining that continuation of suspension is proper if the underlying order is clear, but determining that the order in the particular case was ambiguous by Commerce's own acknowledgment). Because we have determined that the ADD Order is clear in covering Quiedan's stakes, we reject Quiedan's arguments of error regarding initiation of a formal scope inquiry and suspension of liquidation.

## III

For the foregoing reasons, we affirm the judgment of the Court of International Trade.

No costs.

## AFFIRMED