# United States Court of Appeals
# for the Federal Circuit

---

**WALGREEN CO. OF DEERFIELD, IL.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-1136

---

Appeal from the United States Court of International Trade in case No. 08-CV-0372, Judge Judith M. Barzilay.

---

Decided: October 8, 2010

---

MARK STUART ZOLNO, Katten Muchin Rosenman LLP, of Washington, DC, for plaintiff-appellant. With him on the brief were ERIC R. ROCK and BENJAMIN H. SHANBAUM.

L. MISHA PREHEIM, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee United States. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGNALD T. BLADES, JR., Assistant Director.

---

Before RADER, *Chief Judge*, LINN, and DYK, *Circuit Judges.*

LINN, *Circuit Judge.*

Walgreen Co. of Deerfield, IL ("Walgreen") appeals the affirmance by the Court of International Trade ("CIT") of a determination by the Department of Commerce ("Commerce") in *Final Scope Ruling: Antidumping Duty Order on Certain Tissue Paper from the People's Republic of China*, United States Department of Commerce Memorandum from James C. Doyle, Director, Office 9, to Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, Scope Inquiry No. A-570-894 (Sept. 19, 2008) ("*Final Scope Ruling*"), that certain tissue paper contained in Walgreen's "Gift Bag to Go" gift bag sets are within the scope of an earlier antidumping order covering certain tissue paper from the People's Republic of China, *Notice of Amended Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Certain Tissue Paper Products from the People's Republic of China*, 70 Fed. Reg. 16,223-01 (Dep't of Commerce Mar. 30, 2005) ("*Final Order*"). Because Commerce's *Final Scope Ruling* is supported by substantial evidence, we affirm.

BACKGROUND

When domestic producers suspect that competing goods are being sold in the United States at less than fair value (i.e., being "dumped"), they may petition Commerce to impose duties on the importer. *Duferco Steel Co. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002). Commerce first makes an initial determination "of whether there is a reasonable basis to believe or suspect that the merchandise is being sold, or is likely to be sold, at less than fair value." 19 U.S.C. § 1673b(b)(1)(A). Commerce then makes a "final determination of whether

the subject merchandise is being, or is likely to be, sold in the United States at less than its fair value." *Id.* § 1673d(a)(1). As relevant here, "subject merchandise" is "the class or kind of merchandise that is within the scope of an . . . [antidumping] order." *Id.* § 1677(25). In the final determination, Commerce defines the scope of products that are subject to the antidumping order.

"[B]ecause the descriptions of subject merchandise contained in [Commerce's] determinations must be written in general terms," Commerce may issue "'scope rulings' that clarify the scope of an order . . . with respect to particular products." 19 C.F.R. § 351.225(a). The importer may present its arguments for why its products do not fall within the scope of the antidumping order, and members of the domestic industry may reply with counterarguments.

Commerce makes its scope rulings in one or two steps:

> (k) [I]n considering whether a particular product is included within the scope of an order . . . the Secretary will take into account the following:
>
> (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.
>
> (2)   When the above criteria are not dispositive, the Secretary will further consider:
> (i)   The physical characteristics of the product;
> (ii)  The expectations of the ultimate purchasers;

  (iii)  The ultimate use of the product;
  (iv)  The channels of trade in which the product is sold; and
  (v)   The manner in which the product is advertised and displayed.

*Id.* § 351.225(k)(1-2). If Commerce determines that the application for a scope ruling and the criteria in § 351.225(k)(1) ("(k)(1) criteria") are sufficient to determine whether the products fall within the scope of the final antidumping order, Commerce issues a final scope ruling. *Id.* § 351.225(d). If not, Commerce initiates a scope inquiry to consider the criteria enumerated in § 351.225(k)(2) ("(k)(2) criteria"), which then results in a final scope ruling. *Id.* § 351.225(e).

The genesis of this case was a petition filed by members of the domestic industry, asking Commerce to determine that certain competing tissue papers were being sold in violation of the antidumping laws. On September 21, 2004, Commerce issued a preliminary determination on the petition, finding that there is a reasonable basis for belief that subject merchandise was being sold at less than fair value. *Certain Tissue Paper Products and Certain Crepe Paper Products from the People's Republic of China: Notice of Preliminary Determinations of Sales at Less Than Fair Value, Affirmative Preliminary Determination of Critical Circumstances and Postponement of Final Determination for Certain Tissue Paper Products*, 69 Fed. Reg. 56,407-19 (Dep't Commerce Sept. 21, 2004) ("*Preliminary Determination*"). Commerce then made a final determination that subject merchandise was being dumped. *Notice of Final Determination of Sales at Less Than Fair Value: Certain Tissue Paper Products from the People's Republic of China*, 70 Fed. Reg. 7475-01 (Dep't Commerce Feb. 14, 2005) ("*Final Determination*"). In that final determination, Commerce explicitly adopted an

*Issues and Decisions Memorandum for the Antidumping Duty investigation of Certain Tissue Paper Products from the People's Republic of China*, 70 ITADOC 7475 (Feb. 3, 2005) ("*I&D Memo*") as part of its decision. *Final Determination*, 70 Fed. Reg. at 7476. Commerce then amended certain details of the *Final Determination*, and released its *Final Order*. In the *Final Order*, Commerce conclusively laid out the scope of its antidumping determination. In full, Commerce defined the scope as follows:

> The tissue paper products subject to this order are cut-to-length sheets of tissue paper having a basis weight not exceeding 29 grams per square meter. Tissue paper products subject to this order may or may not be bleached, dye-colored, surface-colored, glazed, surface decorated or printed, sequined, crinkled, embossed, and/or die cut. The tissue paper subject to this order is in the form of cut-to-length sheets of tissue paper with a width equal to or greater than one-half (0.5) inch. Subject tissue paper may be flat or folded, and may be packaged by banding or wrapping with paper or film, by placing in plastic or film bags, and/or by placing in boxes for distribution and use by the ultimate consumer. Packages of tissue paper subject to this order may consist solely of tissue paper of one color and/or style, or may contain multiple colors and/or styles.
>
> The merchandise subject to this order does not have specific classification numbers assigned to them under the HTSUS. Sub-

ject merchandise may be under one or more of several different subheadings, including: 4802.30; 4802.54; 4802.61; 4802.62; 4802.69; 4804.31.1000; 4804.31.2000; 4804.31.4020; 4804.31.4040; 4804.31.6000; 4804.39; 4805.91.1090; 4805.91.5000; 4805.91.7000; 4806.40; 4808.30; 4808.90; 4811.90; 4823.90; 4820.50.00; 4802.90.00; 4805.91.90; 9505.90.40. The tariff classifications are provided for convenience and customs purposes; however, the written description of the scope of this order is dispositive.

Excluded from the scope of this order are the following tissue paper products: (1) tissue paper products that are coated in wax, paraffin, or polymers, of a kind used in floral and food service applications; (2) tissue paper products that have been perforated, embossed, or die-cut to the shape of a toilet seat, i.e., disposable sanitary covers for toilet seats; (3) toilet or facial tissue stock, towel or napkin stock, paper of a kind used for household or sanitary purposes, cellulose wadding, and webs of cellulose fibers (HTSUS 4803.00.20.00 and 4803.00.40.00).

*Final Order*, 70 Fed. Reg. at 16223-24.

On February 5, 2008, Walgreen requested a scope ruling from Commerce that five of its gift bag sets were not within the scope of the *Final Order*. The sets contain a gift bag, a crinkle bow, and one to six sheets of tissue paper. The tissue paper comprises from six to eleven percent of the cost of the gift bag sets.

Commerce's scope ruling was in two parts. Commerce first determined that Walgreen's gift bag sets were not unique products, but "merely subject merchandise packaged with non-subject merchandise." *Final Scope Ruling* at 11. Commerce also relied on statements in the *Preliminary Determination* and the *I&D Memo*, that explicitly included within the scope of the duty investigation, subject merchandise packaged with non-subject merchandise. *Final Scope Ruling* at 11. Commerce analogized Walgreen's gift bag sets to the products at issue in a prior scope ruling. *Recommendation Memo -- Final Scope Ruling on the Request by Texsport for Clarification of the Scope of the Antidumping Duty Order on Porcelain-on-Steel Cooking Ware from the People's Republic of China* at 4, U.S. Dep't of Commerce Memorandum from Richard Moreland, Director, Office of Antidumping Compliance, to Joseph A. Spetrini, Deputy Assistant Secretary for Compliance, Scope Inquiry No. A-570-506 (Aug. 8, 1990) ("*Texsport*") (concluding that an outdoor cooking set including teakettles, skillets, frypans, cups and plates, was within the scope of an anti-dumping order covering teakettles, skillets and frypans). Commerce distinguished a large number of prior scope determinations involving unrelated antidumping orders, termed by Walgreen the "mixed media scope rulings."[1] In distinguishing those rulings, Commerce considered the sets of products involved in those determinations to be "unique products," in contrast to what it considered to be simply the packaging of subject merchandise with non-subject merchandise here. Commerce next determined that because the tissue paper included in the gift bag set, when considered separately, was unambiguously within the scope of the *Final Order*, the (k)(1) criteria were sufficient to find that

[1] For cases comprising the "mixed media scope rulings," see Opening Br. of Pl.-Appellants 19-20.

Walgreen's gift bag sets were within the scope of the *Final Order*. Commerce thus concluded that it need not consider the (k)(2) criteria. *Final Scope Ruling* at 14.

The Court of International Trade affirmed, in part because of the deferential standard of review. *Walgreen Co. of Deerfield, IL. v. United States*, Slip Op. 09-122, 2009 WL 3458009 (Ct. Int'l Trade Oct. 28, 2009) ("*CIT Op.*").

Walgreen appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

### DISCUSSION

In reviewing Commerce's scope decision, we step into the shoes of the CIT and apply the same deferential "substantial evidence" standard of review that it applied to its review of Commerce's determination. *Sango Int'l, L.P. v. United States*, 484 F.3d 1371, 1378 (Fed. Cir. 2007). This means that we will affirm the CIT's affirmance of Commerce's scope ruling unless the record lacks "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion reached." *Id.* (citing *Consol. Edison v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 224 (1938)). While we grant deference to Commerce's own interpretation of its antidumping orders, "Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Duferco Steel Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002) (internal citations omitted).

Here, it is undisputed that the tissue papers included in Walgreen's gift bag sets are "cut-to-length sheets of tissue paper having a basis weight not exceeding 29 grams per square meter . . . with a width equal to or greater than one-half (0.5) inch." *See Final Order*, 70 Fed. Reg. at 16,223. The tissue papers do not fall within any of

the enumerated exceptions to the *Final Order.  See id.* at 16,224.  Moreover, the *Final Order* specifically includes within its scope such tissue paper that is "packaged . . . by placing [it] in plastic or film bags, and/or placing [it] in boxes for distribution and use by the ultimate consumer." *Id.* at 16,223.  The question thus presented is whether the packaging of the tissue paper in gift bag sets takes it out of the scope of the *Final Order*.

Walgreen argues that Commerce was required to conduct a scope inquiry on the entire gift bag set, rather than separate the set into its constituent components.  That is, Walgreen contends that the "particular product" to be analyzed in the scope ruling should have been the gift bag set as a whole, because that was how Walgreen "presented the issue to [Commerce]" when it initiated the scope ruling, and because the retail unit for sale was the gift bag set.  Walgreen then argues that because the *Final Order* did not consider gift bag sets, the (k)(1) criteria are not dispositive, and Commerce was required to consider the so-called *Diversified Products* criteria of (k)(2).[2] Walgreen relies on the "mixed media scope rulings" and distinguishes *Texsport*, just as it did to Commerce and the CIT.

The government argues that the *Final Order* unambiguously covers Walgreen's gift bag sets, because Commerce properly categorized the sets as "subject merchandise packaged with non-subject merchandise," *Final Scope Ruling* at 13, which was explicitly within the scope of the *I&D Memo* that was incorporated into the *Final Determination.   See I&D Memo* ("[A]ll subject

---

[2]    Prior to codification in § 351.225(k)(2), these factors appeared in the CIT's decision in *Diversified Prods. Corp. v. United States*, 572 F.Supp. 883 (Ct. Int'l Trade 1983).

merchandise – cut-to-length tissue paper – is subject to this proceeding, whether or not it is sold or shipped with non-subject merchandise."). The government supports Commerce's position and relies on *Final Determination of Sales at Less Than Fair Value: Fresh Cut Roses from Ecuador*, 60 Fed. Reg. 7019 (Department of Commerce Feb. 6, 1995) ("*Fresh Cut Roses*"), for the proposition that subject merchandise packaged with non-subject merchandise may be included in the scope of the order. Finally, the government supports Commerce's reliance on *Texsport*.

Walgreen's first argument rests on the faulty premise that Commerce does not have discretion to determine that a set of related products is merely a combination of subject and non-subject merchandise, and not a unique product. Under Walgreen's theory, a particular product should be considered a "mixed media" set when it is so presented in the petition initiating the scope ruling. Such a rule would allow importers to frame the issue in the scope ruling to eliminate any dispositive use of (k)(1) to find that a product is within the scope of an antidumping order. But, as we said in *Duferco*, "[i]t is the responsibility of the agency, not those who initiated the proceedings, to determine the scope of the final orders." 296 F.3d at 1097. Walgreen's rule would undermine Commerce's discretion at the very heart of its expertise: the application of its own orders to particular facts. We decline to adopt such a rule.

Walgreen also appears to argue that because its gift bag sets and the products at issue in the "mixed media scope rulings" are "retail packages containing various components presented together to perform a particular function," Opening Br. of Pl.-Appellants 21, Commerce was required to consider Walgreen's product a "mixed media" set and to address it under the (k)(2) criteria.

However, the "mixed media scope rulings" do not purport to define generally applicable criteria for what constitutes a "mixed media" set, and they do not take into account the unique language of the *Final Order* in this case.

In the *Final Scope Ruling – Antidumping Duty Order on Certain Cased Pencils from the People's Republic of China (PRC) – Request by Fiskars Brands, Inc.* at 12, United States Department of Commerce Memorandum from Wendy J. Frankel, Director, AD/CVD Operations, Office 8, to Barbara Tillman, Acting Deputy Assistant Secretary for Import Administration, Scope Inquiry No. A-570-827 (June 3, 2005), one of the "mixed media scope rulings" relied on by Walgreen, Commerce determined that a drawing compass and pencil combination product was not subject to an antidumping order covering pencils. Commerce found that "[t]he merchandise subject to this scope request is the multi-piece compass/pencil product and not the pencils individually, which are only minor components of the compass/pencil products." *Id.* at 11. Because such "mixed media" sets were not explicitly discussed in the antidumping order, the (k)(1) criteria were not dispositive of the scope inquiry, and Commerce was required to consider the (k)(2) criteria in making its scope ruling. *Id.* at 5. In so doing, Commerce noted that it "has previously addressed scope inquiries covering mixed media sets using the factors listed in 19 C.F.R. 351.225(k)(2)." *Id.* However, Commerce did not set forth a bright line rule for determining whether imports should be analyzed as "mixed media" sets, or as combinations of products. Instead, Commerce properly exercised its discretion under the facts and circumstances of the case before it, concluding that the imported products should be considered "mixed media" sets. *See also Final Scope Ruling--Antidumping Duty Order on Certain Cased Pencils from the People's Republic of China--Request by*

*Dollar General Corporation* at 3, U.S. Dep't of Commerce Memorandum from Tom Futtner, Acting Office Director, AD/CVD Enforcement, Group II, Office IV, to Holly Kuga, Acting Deputy Assistant Secretary Import Administration, Scope Inquiry No. A-570-827 (Apr. 6, 2001) ("The issue presented by this scope inquiry is whether Dollar's stationary sets, which include a 3 ¼-inch or 4 ½ -inch pencil, are within the scope of the order on certain cased pencils from the PRC."); *Final Scope Ruling-- Antidumping Duty Order on Certain Cased Pencils from the People's Republic of China--Request by Target Corporation Regarding "Hello Kitty Fashion Totes"* at 4, U.S. Dep't of Commerce Memorandum from Laurie Parkhill, Director, Office 8, AD/CVD Enforcement, to Jeffrey May, Deputy Assistant Secretary for Import Administration, Scope Inquiry No. A-570-827 (Sept. 29, 2004) ("[We] observe[] that the Totes include a single pencil which, considered individually, is covered by the scope of the order. The Totes are multimedia sets, however . . . [and] the scope of the order does not contemplate mixed-media sets.").

These ad hoc determinations do not require that Walgreen's gift bag sets be considered "mixed media" sets. Walgreen acknowledges that Commerce has adopted no formal definition of a "mixed media" set. Each case must be decided on the particular facts. *Cf. Sango Int'l L.P. v. United States*, 567 F.3d 1356, 1363 (Fed. Cir. 2009) (noting that "Commerce is not required as a matter of law to consider components separately simply because they are packaged, sold, and advertised separately"); *Texsport* at 4 (analyzing the subject merchandise elements of a camping cookware set as within the scope of an antidumping order though packaged and sold with non-subject merchandise). *Cf. also Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1363-64 (Fed. Cir. 2007) (ruling that etouffee

made with crawfish tail meat was not within the scope of an antidumping order covering "prepared" crawfish tail meat because the meat was "'substantially transformed' by its preparation process," and distinguishing a prior scope ruling regarding canned tomatoes on its facts as non-transformative).

The primary source in making a scope ruling is the antidumping order being applied (and the prior scope determinations applying that order), not necessarily the scope rulings made in unrelated antidumping orders. Commerce correctly determined on the facts presented in this case that the components of the gift bag sets did not interact in any way or otherwise represent a unique product. Having so concluded, it then properly determined, based on the (k)(1) criteria and the language of the *Final Order*, that the tissue paper contained in the gift bag sets fell within the scope of the antidumping order.

We note that Commerce went on to rely on expansive language in the *I&D Memo* that suggested that the scope of the investigation should be read broadly: "[W]e stress that all subject merchandise – cut-to-length tissue paper – is subject to this proceeding, whether or not it is sold or shipped with non-subject merchandise." *I&D Memo* 7475. The CIT also relied in part on that language in affirming Commerce's determination. *See CIT Op.* at 5. This court has made clear that it is the language of Commerce's final order that defines the scope of the order albeit "with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order." *Duferco Steel*, 296 F.3d at 1097 (quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed. Cir. 1990)). While the petition, factual findings, legal conclusions, and preliminary orders can aid in the analysis, they cannot substitute for the language of the order itself, which remains the

"cornerstone" in any scope determination. *Id.* Thus, Commerce was correct in focusing its analysis on the language of the *Final Order* and the clear guidance it provided. Commerce was able to exercise its discretion based on the language of the *Final Order* in determining, on the facts presented, that the gift bag sets were not unique products and that the tissue paper contained therein retained its individual character. While Commerce and the CIT also referred to the expansive language in the *I&D Memo*, Commerce's determination was not solely in reliance thereon and thus was not lacking in substantial evidence support properly predicated on the language of the *Final Order*.

CONCLUSION

Because substantial evidence supported Commerce's decision that, based on the language of the *Final Order*, the (k)(1) criteria were dispositive of the scope determination, this court affirms the decision of the Court of International Trade affirming Commerce's *Final Scope Ruling*.

**AFFIRMED**