# United States Court of Appeals for the Federal Circuit

---

**STAR PIPE PRODUCTS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-2381

---

Appeal from the United States Court of International Trade in No. 1:17-cv-00229-MAB, Judge Mark A. Barnett.

---

Decided:  November 30, 2020

---

KAVITA MOHAN, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, Washington, DC, argued for plaintiff-appellant.  Also represented by FRANCIS J. SAILER, ANDREW THOMAS SCHUTZ; NED H. MARSHAK, DAVID M. MURPHY, New York, NY.

PATRICIA M. MCCARTHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by ELIZABETH ANNE SPECK, JEFFREY B. CLARK, JEANNE DAVIDSON; DANIEL CALHOUN, WILLIAM MITCHELL PURDY, Office of the Chief Counsel for Trade Enforcement

and Compliance, United States Department of Commerce, Washington, DC.

————————————

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CHEN.

Opinion concurring-in-part and dissenting-in-part filed by *Circuit Judge* REYNA.

CHEN, *Circuit Judge.*

Star Pipe Products (Star Pipe) appeals from a judgment of the Court of International Trade (Trade Court) upholding the Department of Commerce's (Commerce) interpretation of an antidumping order on steel threaded rod (STR) from the People's Republic of China. The Trade Court held that the STR components included in certain Joint Restraint Kits imported by Star Pipe were subject to the order. The Trade Court further denied as moot Star Pipe's challenge to a liquidation instruction issued from Commerce to U.S. Customs and Border Protection (CBP) following Commerce's interpretation of the order. We affirm.

BACKGROUND

When participants in a domestic industry believe that competing foreign goods are being sold in the United States at less than their fair value, they may petition Commerce to impose antidumping duties on the foreign goods. After investigation and related proceedings before the International Trade Commission (ITC), Commerce issues an antidumping duty order if "the subject merchandise is being, or is likely to be, sold in the United States at less than its fair value." 19 U.S.C. §§ 1673(d)–(e). This order "includes a description of the subject merchandise, in such detail as [Commerce] deems necessary." 19 U.S.C. § 1673e(a)(2).

Importers may seek a "scope ruling" clarifying whether their products meet the "description of the subject merchandise" set forth in an antidumping order. 19 C.F.R. § 351.225(a), (c). This case presents the question of whether subject merchandise meeting the literal "description" in the antidumping order can nevertheless be excluded from that order because the subject merchandise is packaged and imported together with non-subject merchandise. Such combinations of non-subject and otherwise-subject merchandise are referred to as "mixed media" items.

The antidumping order at issue here is directed to certain STR imported from China. *See Certain Steel Threaded Rod from the People's Republic of China*, 74 Fed. Reg. 17,154 (Dep't of Commerce Apr. 14, 2009) (STR Order). In the order, Commerce described in detail the physical characteristics of the STR, including shape, finish, construction, and metallurgical requirements. *Id.* at 17,154–55. Commerce also prescribed several exclusions for merchandise that, although would otherwise meet the order's "description" of subject merchandise, would not be considered subject merchandise. *Id.* at 17,155. None of these exclusions relate to mixed media items.

On October 5, 2016, Star Pipe requested a scope ruling to clarify whether its Joint Restraint Kits are within the scope of the STR Order. J.A. 45–58. "These Joint Restraint Kits are used in the water and wastewater industry to connect and secure pipes and to bolt together pipe joints, so that the pipe joints form a water[-]tight restraint to maintain the free and controlled flow of water/[wastewater]." J.A. 46. The Joint Restraint Kits consist of a combination of castings, bolts, bolt nuts, washers, and STR components, which Star Pipe conceded "if imported alone, would be covered under the scope of the [STR] *Order*." *Id.* (emphasis in original). Star Pipe contended that its Joint Restraint Kits should be excluded from the STR Order because the STR

components were merely incidental components used to secure the castings.  J.A. 46–47.

On July 31, 2017, Commerce issued its scope ruling, concluding that the STR components within Star Pipe's Joint Restraint Kits are within the scope of the STR Order. Commerce explained that its inquiry was guided by the framework set forth by our court in *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013) (*MCN*).  Because Star Pipe had conceded that the STR components of its Joint Restraint Kits are themselves subject merchandise covered by the scope of the STR Order, Commerce under the *MCN* framework proceeded to consider whether those STR components should be excluded because they are packaged with other components in the Joint Restraint Kits.  Commerce found nothing in the STR Order or its history indicating that otherwise-subject merchandise should be treated differently due to its packaging with other merchandise.  J.A. 263.  Commerce further noted that both the petition and an ITC ruling leading to the STR Order emphasized that STR can be used in the same waterworks applications for which Star Pipe's Joint Restraint Kits are intended.  *Id.*; *see also Certain Steel Threaded Rod from China*, USITC Inv. No. 731-TA-1145 (Apr. 2009).  Commerce thus concluded that, under the *MCN* framework, Star Pipe's STR components are presumptively within the scope of the STR Order.  J.A. 263.

Commerce next considered whether the *MCN* presumption might be overcome on the basis of prior scope rulings on an unrelated antidumping order relating to pencils. J.A. 263; *see also Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66,909 (Dep't of Commerce Dec. 28, 1994) (Pencils Order).  Star Pipe had argued that these Pencils Order scope rulings established a clear standard as to how Commerce handles mixed media items in the context of scope rulings and, accordingly, the STR Order should be read to include an implicit exception for mixed

media.  Finding that each of these Pencils Order scope rulings were "based on the facts and circumstances in that particular case, and did not identify a mixed media standard," Commerce concluded that these rulings did not "support[] an interpretation of the scope of the [STR] *Order* that is contrary to its literal language." J.A. 263–64.

Following its scope ruling, Commerce issued an instruction to CBP to:

> Continue to suspend liquidation[1] of entries of steel threaded rod from the People's Republic of China, including the steel threaded rod components of Star Pipe Products' Joint Restraint Kits, imported by Star Pipe Products and described above, subject to the antidumping duty order on steel threaded rod from the People's Republic of China.

J.A. 281.  On August 21, 2017, Star Pipe requested clarification from Commerce as to whether the above liquidation instruction was intended to apply antidumping duties to STR components entered *prior* to the date of initiation of the scope inquiry.  J.A. 278.  The pre-initiation entries of STR components at issue were not suspended at the time of Commerce's scope ruling.  CBP thus proceeded to liquidate those entries pursuant to 19 C.F.R. § 351.225(l)(3),[2]

---

[1]    Suspension of liquidation is the postponement of "the final computation or ascertainment of duties on entries."    19  C.F.R. § 159.1  (defining  "liquidation");  *id.* § 351.102(b)(50).

[2]    19  C.F.R. § 351.225(l)(3) states, in relevant part: "Where there has been no suspension of liquidation, the Secretary will instruct the Customs Service to suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product  entered,  or  withdrawn  from  warehouse,  for

which prescribes suspension of liquidation for imports entered "on or after the date of initiation of the scope inquiry," but not for imports entered prior to the date of initiation of the scope inquiry.

Star Pipe also challenged Commerce's scope ruling before the Trade Court. The Trade Court assumed jurisdiction over the matter on August 30, 2017, before Commerce responded to Star Pipe's request for clarification of the liquidation instruction. On October 3, 2017, the Trade Court granted a preliminary injunction enjoining the liquidation of unliquidated entries of Star Pipe's joint restraint kits.

Before the Trade Court, Star Pipe challenged Commerce's ruling that Star Pipe's STR components were subject to the antidumping order. Star Pipe also challenged Commerce's instruction to CBP to "continue to suspend liquidation" as a violation of 19 C.F.R. § 351.225(l)(3) because, in Star Pipe's view, the instruction required duties to be assessed on unliquidated entries that had been entered prior to the initiation of the scope inquiry. The Trade Court upheld Commerce's ruling that Star Pipe's STR components were subject to the STR Order and found Star Pipe's challenge to Commerce's liquidation instruction to be moot because the entries at issue had already been liquidated without assessment of antidumping duties. Star Pipe appeals to this court, and we have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

I. Commerce's Scope Ruling

"We review the Trade Court de novo, applying the same substantial-evidence standard of review that it applies in reviewing Commerce's determinations." *MCN*, 725 F.3d at

_____

consumption *on or after the date of initiation of the scope inquiry.*" (emphasis added).

1300.  We afford "'significant deference to Commerce's interpretation of a scope order,' so long as Commerce's interpretation is not 'contrary to the order's terms' and does not 'change the scope of the order.'"  *Id.* (citing *Glob. Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).

In *MCN*, we set forth a particularized framework to guide Commerce in interpreting the scope of its antidumping orders as to mixed media items.  *Id.* at 1302–03.  First, Commerce is to "determine whether the potentially-subject merchandise included within the mixed media item is within the literal terms of the antidumping order."  *Id.* at 1302.  Second, if the merchandise is within the literal terms of the order, Commerce should "determine whether the inclusion of that merchandise within a mixed media item should nonetheless result in its exclusion from the scope of the order."  *Id.*

The first stage of the *MCN* framework focuses on the "subject merchandise" of the antidumping order—here, whether the STR components of Star Pipe's Joint Restraint Kits meet the description of STR set forth in Commerce's antidumping order.  "[T]he procedure for conducting this inquiry is specified in our cases and Commerce's regulations," and begins with "the language of the final order." *Id.*  If the language of the final order is ambiguous as to whether Star Pipe's STR components are in-scope, then Commerce under its regulations must consider the "(k)(1)" materials: "[t]he descriptions of the merchandise contained in the petition, [Commerce's] initial investigation, and the [prior] determinations of [Commerce] (including prior scope determinations) and the [International Trade] Commission."  *Id.* (citing 19 C.F.R. § 351.225(k)(1)).  If, in turn, "the (k)(1) materials are not dispositive, Commerce then considers the (k)(2) criteria: '[t]he physical characteristics of the product,' '[t]he expectations of the ultimate purchasers,' '[t]he ultimate use of the product,' '[t]he channels of trade in which the product is sold,' and '[t]he manner in

which the product is advertised and displayed.'" *Id.* (citing 19 C.F.R. § 351.225(k)(2)).

This first stage of the *MCN* framework concludes with a determination of whether the subject merchandise falls within the literal scope of the order. Here, it is undisputed that Star Pipe's STR components are within the literal scope of the STR Order. Appellant's Br. at 5 ("Star Pipe recognizes that the component STR included as part of the Joint Restraint Kits themselves would be in scope if imported alone."). In this instance, then, there was no need to consult either the (k)(1) materials or the (k)(2) criteria in making this determination. The question then is whether Commerce should nevertheless exclude that otherwise-subject merchandise from the scope of the order because it is packaged with non-subject merchandise.

To answer the question of whether the order may be reasonably interpreted to include an exception for mixed media sets, Commerce must again begin with the language of the order itself. *MCN*, 725 F.3d at 1303. Where the order itself does not provide such an exception, Commerce must turn to the "history of the antidumping order," i.e., the petition and Commerce's initial investigation. *Id.* If the order's history likewise fails to establish that subject merchandise should be treated differently on the basis of its inclusion within a mixed media set, then "a presumption arises that the included merchandise is subject to the order." *Id.* at 1304. Star Pipe does not contend that the STR Order or its history provides an exception for mixed media. The *MCN* presumption thus applies.[3]

---

[3]    Moreover, as Commerce emphasized, the STR Order's history suggests that it was intended to encompass STR used in waterworks applications such as Star Pipe's Joint Restraint Kits. J.A. 262–63. The petition and the ITC ruling leading to the STR Order emphasized that the

The *MCN* presumption arises because "the primary source in making a scope ruling is the antidumping order being applied," and "although the scope of a final order may be clarified, it [cannot] be changed in a way contrary to its terms." *Id.* (citing *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1356 (Fed. Cir. 2010) and *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002)). Although Commerce "enjoys substantial freedom to interpret and clarify its antidumping orders," *Novosteel SA v. United States*, 284 F.3d 1261, 1269 (Fed. Cir. 2002), that freedom is limited to interpretations that are reasonable, reflecting the due-process principle that agencies must "provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires," *MCN*, 725 F.3d at 1300–01 (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (internal quotations omitted)).

"Published guidance issued prior to the date of the original antidumping order" may suffice to overcome the presumption that the literal language of an antidumping order governs in mixed media cases. *MCN*, 725 F.3d at 1304. But, as we explained, such guidance must provide a clear and ascertainable standard sufficient to "allow importers to predict how Commerce would treat their mixed media products." *Id.* at 1305. Set against the backdrop of an order's silence on mixed media and the determination that the subject merchandise is within the literal terms of the order, any attempt to carve out a mixed media exception faces an uphill climb to "interpret[] the order contrary to its literal language." *Id.* at 1304.

---

STR Order encompasses STR for "bolting together pipe joints in the waterworks industry." *Id.* Likewise, Star Pipe's STR components are packaged in Joint Restraint Kits "used in the water and wastewater industry to connect and secure pipes and to bolt together pipe joints." J.A. 46.

One source of such published guidance may be found in Commerce's scope determinations, if published prior to the date of the antidumping order. *Id.* Star Pipe argues, as it did at the scope inquiry before Commerce, that Commerce's decisions in five scope rulings[4] specific to the Pencils Order provided clear notice that Commerce intended all anti-dumping orders to include an unstated mixed media exception in which the mixed media is evaluated based on the (k)(2) criteria. Specifically, Star Pipe contends that, in these prior Pencils Order scope rulings, Commerce established that the STR Order contains an unstated exception for "incidental components (which, standing alone, would be subject merchandise) contained in mixed media sets." Appellant's Br. at 29–30. We have already rejected this view of the Pencils Order scope rulings.

Commerce has not uniformly applied a particular test in determining whether to focus its inquiry on the subject merchandise (here the STR components) or the mixed media set as a whole (here the Joint Restraint Kits). As we explained in *MCN*, Commerce's scope rulings, including the Pencils Order scope rulings, have been "ad hoc determinations" that "lack clarity" and do not establish "'formal definition[s],' 'generally applicable criteria,' or 'bright line rule[s]'" for conducting mixed media inquiries." *MCN*, 725 F.3d at 1305 (citing *Walgreen*, 620 F.3d at 1355–56). In *MCN*, Commerce "concede[d] that these ad hoc determinations provided no ascertainable standard that would allow importers to predict how Commerce would treat their mixed media products, and that it 'ha[d] not previously provided a complete listing of the factors it may consider when conducting a mixed[] media analysis.'" *Id.*

In *Walgreen*, Commerce did not address whether a component in that case was merely "incidental" to a mixed

---

4    For these Pencils Order scope rulings, see Appellant's Opening Br. at 30–31.

media set. Instead, Commerce evaluated as a threshold matter whether the mixed media set (a gift bag) was a unique product or a mere aggregation of components, concluding that Walgreen's gift bag was the latter. *See* 620 F.3d at 1355; *see also Final Scope Ruling: Antidumping Duty Order on Certain Tissue Paper from the People's Republic of China*, U.S. Dep't of Commerce Memorandum from James C. Doyle, Director, Office 9, to Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, Scope Inquiry No. A–570–894 (Sept. 19, 2008). On the basis of that determination, Commerce focused its scope inquiry on the tissue paper that fell within the literal scope of the order rather than the gift bag as a mixed media set. *Id.* at 1356–57.

In another prior scope ruling on whether a camping set was subject to an antidumping order on certain porcelain-on-steel items used for cooking, Commerce likewise focused its inquiry on the cooking-ware components of the camping set, as opposed to the camping set as a whole. *Recommendation Memo—Final Scope Ruling on the Request by Texsport for Clarification of the Scope of the Antidumping Duty Order on Porcelain–on–Steel Cooking Ware from the People's Republic of China*, U.S. Dep't of Commerce Memorandum from Richard Moreland, Director, Office of Antidumping Compliance, to Joseph A. Spetrini, Deputy Assistant Secretary for Compliance, Scope Inquiry No. A–570–506 (Aug. 8, 1990) (*Texsport*). In *Texsport*, Commerce assigned duties to the cooking-ware components (a frying pan, stew pot, and coffee pot) and declined to assign duties to the kitchenware components (plates and cups), without consulting the (k)(2) criteria or addressing why the components should be evaluated individually instead of in the context of their packaging with non-subject merchandise. *Id.*

*Walgreen* and *Texsport* thus undermine Star Pipe's argument that Commerce has consistently turned to the (k)(2) criteria when undertaking a scope ruling involving

mixed media, let alone any suggestion that Commerce has provided clear guidance that a mixed media exception should be imported into otherwise silent orders. Nor do the Pencils Order scope rulings provide sufficiently clear guidance to establish such a generally applicable mixed media exception. In *Walgreen*, we rejected the importer's argument that "Commerce was required to consider [the importer's] product a 'mixed media' set and to address it under the (k)(2) criteria," explaining that Commerce's Pencils Order scope rulings on mixed media were "ad hoc" determinations that "did not set forth a bright line rule for determining whether imports should be analyzed as 'mixed media' sets, or as combinations of products." 620 F.3d 1350, 1355. As explained above, we reached that same conclusion in *MCN*. In view of the variance in Commerce's approach to mixed media across the Pencils Order scope rulings, *Walgreen*, and *Texsport*, we agree with the government that Commerce's prior scope rulings do not provide clear guidance sufficient to establish a generally applicable exception for mixed media based on the (k)(2) criteria.

Thus, although we have acknowledged that Commerce's "prior scope rulings do establish that there exists in some circumstances an implicit mixed media exception even in the absence of explicit language in the final order," *MCN*, 725 F.3d at 1305, the scope rulings on the Pencils Order that Star Pipe relies upon do not provide the type of clear guidance needed to interpret the STR Order contrary to its literal terms.

Separately, Star Pipe argues that, because the STR Order and its history do not expressly address mixed media, this silence means that the (k)(1) materials cannot be "dispositive" of the scope inquiry. Citing to 19 C.F.R. § 351.225(k), Star Pipe contends that Commerce must therefore consider the (k)(2) criteria. We disagree.

The first stage of the *MCN* framework already considers the (k)(2) criteria to the extent required by Commerce's

regulations.   Specifically,  19 C.F.R. § 351.225(k) requires Commerce to, "in considering whether a particular product is included within the scope of an order," take into account the (k)(1) materials, and if not "dispositive," then the (k)(2) criteria.  Likewise, at the first stage of the *MCN* framework "Commerce must determine whether the potentially-subject merchandise included within the mixed media item is within the literal terms of the antidumping order," beginning with the language of the order and proceeding to the (k)(1) materials and (k)(2) criteria as necessary to resolve ambiguity.  *MCN*, 725 F.3d at 1302.

Here, it is undisputed that Star Pipe's STR components are in fact within the literal terms of the antidumping order.  Moreover, the antidumping order and its history do not provide any exception for mixed media.  That conclusion is itself sufficient to end the scope inquiry, in the absence  of  any  pre-established,  clear  guidance  to  the contrary.  Star Pipe cannot *create* ambiguity simply by contending that the order must be interpreted contrary to its literal language, i.e., to carve out an exception for otherwise-subject merchandise that is packaged with non-subject merchandise.  Where, as here, "neither the text of the order nor its history indicates that subject merchandise should be treated differently on the basis of its inclusion within a mixed media item," such an exception must be clear and ascertainable from Commerce's prior published guidance.  *Id.* at 1304–05.  To permit otherwise would authorize the type of ad hoc determinations that fail to "allow importers to predict how Commerce would treat their mixed media products."  *Id.* at 1305.  As we made clear in *MCN*, it is true that Commerce has the discretion to issue clear guidance, which may draw from, among other things, the (k)(2) criteria, if relevant.  *Id.*  But *MCN* also made clear that, absent such clear guidance, employing the (k)(2) criteria in an effort to create an unstated exception to the terms and history of the order is not mandatory.  *Id.*  And, as we explained above, Star Pipe does not point to any such

guidance clearly requiring Commerce to do so in every antidumping order when evaluating a mixed media item.[5] Because Commerce has elected not to publish clear guidance notifying regulated parties of an implicit mixed media exception for otherwise silent antidumping orders, there is no basis for Commerce to reach the (k)(2) criteria at the second stage of the *MCN* framework because such silent orders cannot then be reasonably read to include an implicit mixed media exception.[6]

Finally, Star Pipe argues that Commerce must consider the (k)(2) criteria whenever it initiates a formal scope inquiry. In Star Pipe's view, Commerce's failure to reach (k)(2) violates 19 C.F.R. § 351.225(e), which provides that Commerce will initiate a scope inquiry if the "application

---

[5]    Likewise, Star Pipe's argument that Commerce should have consulted the Harmonized Tariff Schedule of the United States (HTSUS) classification system fails because Star Point points to no published guidance establishing how Commerce would rely on the HTSUS classification system to interpret its STR Order contrary to its literal terms.

[6]    In *MCN*, we observed that "many of the problems presented by this case could be avoided if Commerce were to identify in its antidumping orders or in prospective regulations the factors it will consider in resolving mixed media and other cases." *Id.* at 1306. We note that Commerce recently has taken steps to promulgate regulations that provide clear notice to regulated parties that Commerce's future orders will contain an implicit mixed media exception. *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49472, 49497 (Dep't of Commerce Aug. 13, 2020) (proposing a three-factor test "to determine whether the component product's inclusion in the larger merchandise results in its exclusion from the scope of the order").

and the descriptions of the merchandise referred to in paragraph (k)(1)" are not sufficient to resolve the issue of whether a product is in-scope. We again disagree. That the "application" submitted by a party to request a scope ruling and the (k)(1) materials are insufficient might simply mean that Commerce requires "further input from the interested parties," for example if Commerce seeks more information on the product in question than provided in the submitted application. J.A. 29–30. That more information is needed does not mean that the (k)(1) materials will not ultimately be dispositive. Thus, Commerce's decision to initiate a scope inquiry does not itself require consideration of the (k)(2) criteria. 19 C.F.R. § 351.225(e) does not recite any such requirement. As the Trade Court noted, "Star Pipe conflates the decision to initiate a scope inquiry with the conclusion that the (k)(1) materials are not dispositive." J.A. 29.

For the reasons above, we agree with the Trade Court that substantial evidence supports Commerce's finding that the STR components of Star Pipe's Joint Restraint Kits are within the scope of the STR Order. Star Pipe does not point to any prior published guidance setting forth an ascertainable standard for reading the STR Order against its literal terms to include an exception for mixed media. "[M]erchandise facially covered by an order may not be *excluded* from the scope of the order unless the order can reasonably be interpreted so as to exclude it." *MCN*, 725 F.3d at 1301.

## II. Commerce's Liquidation Instruction

When Commerce issues a final scope ruling and liquidation of the products in question has not been suspended, then Commerce will instruct CBP to suspend liquidation and demand a monetary deposit for duties on those unliquidated products if entered "on or after the date of initiation of the scope inquiry." 19 C.F.R. § 351.225(l)(3). After the final scope ruling on Star Pipe's products, Commerce

issued an instruction to CBP to "[c]ontinue to suspend liquidation" of Star Pipe's STR components:

> "*Continue to suspend liquidation* of entries of steel threaded rod from the People's Republic of China, including the steel threaded rod components of Star Pipe Products' Joint Restraint Kits, imported by Star Pipe Products and described above, subject to the antidumping duty order on steel threaded rod from the People's Republic of China."

J.A. 281 (emphasis added).

Star Pipe challenges Commerce's instruction to CBP to "continue to suspend liquidation" as improperly assessing duties on pre-initiation imports that were not suspended at the time the scope inquiry was initiated. But Star Pipe's challenge is moot because CBP liquidated the pre-initiation import entries at issue without assessing any antidumping duties. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 726, 184 L. Ed. 2d 553 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."). Moreover, those liquidations are final, as the parties do not dispute that CBP is time-barred from reliquidating those entries to include the assessment of antidumping duties. *See* 19 U.S.C. § 1501 (permitting CBP to reliquidate "within ninety days from the date of the original liquidation"). Regardless of whether Star Pipe is correct in its interpretation of Commerce's liquidation instruction, Star Pipe is not at risk of any assessment of duties on the entries at issue.

Nevertheless, Star Pipe contends that its challenge to Commerce's liquidation instruction is not moot because of the existence of a separate "prior disclosure" proceeding in which Star Pipe argues it must pay antidumping duties in order to "perfect" its prior disclosure. We disagree.

An importer that fails to pay antidumping duties may elect to initiate a "prior disclosure" proceeding by disclosing the circumstances of its violation and tendering the owed duties, with interest, to CBP.  19 U.S.C. § 1592(c)(4); *see also* 19 C.F.R. § 162.74.  By submitting a prior disclosure "before, or without knowledge of, the commencement of a formal investigation of that violation," 19 C.F.R. § 162.74, the importer can mitigate or entirely avoid penalties on its failure to pay duties.  This statutory framework presents importers with a choice: (1) admit to violating an anti-dumping order and pay the owed duties, 19 U.S.C. § 1592(c)(4); or (2) remain silent, and risk penalties if CBP later determines that a violation occurred due to "fraud, gross negligence, or negligence," 19 U.S.C. § 1592(a)(1).

Contrary to Star Pipe's arguments, importers are not compelled to submit a prior disclosure.  Star Pipe is free to choose not to admit to CBP that Star Pipe imported STR in violation of the STR Order.  To the extent that Star Pipe complains of possible penalties associated with that choice, that is a criticism of the statutory framework enacted by Congress and has nothing to do with Commerce's instruction to CBP to suspend liquidations in connection with the scope inquiry at issue in this appeal.

Even if, as Star Pipe demands, Commerce's liquidation instruction were clarified to state that it did not extend to pre-initiation entries, that would not impact or prevent CBP from pursuing an enforcement action under § 1592.  19 C.F.R. § 351.225(l)(3) only limits Commerce's authority to assess duties in the context of a scope inquiry; that regulation does not restrict CBP's authority under § 1592 to assess penalties for fraudulent or negligent violations.  Regardless of Commerce's instruction to CBP to suspend and assess liquidation in connection with Star Pipe's scope inquiry, CBP may independently determine that Star Pipe was negligent or fraudulent in its failure to pay duties on

its Joint Restraint Kits, even if those Joint Restraint Kits were imported prior to the initiation of the scope inquiry.[7]

At bottom, Star Pipe contends that Commerce improperly instructed CBP to suspend and assess duties on merchandise entered prior to the initiation of the scope inquiry. As the Trade Court correctly concluded, Star Pipe's challenge was rendered moot when those pre-initiation entries were liquidated without assessment of any antidumping duties.[8]

## CONCLUSION

We have considered Star Pipe's remaining arguments and find them unpersuasive. For the reasons stated above, we affirm the Trade Court's decision affirming Commerce's final scope ruling and denying Star Pipe's challenge to Commerce's liquidation instruction.

## **AFFIRMED**

---

[7]    Moreover, if CBP were to pursue an enforcement action against Star Pipe's pre-initiation entries, Star Pipe admits that it could raise its challenge to Commerce's liquidation instruction as a defense in that separate, hypothetical proceeding. The Trade Court correctly declined to issue an advisory opinion addressing that scenario.

[8]    Although Star Pipe also argues that these pre-initiation entries were liquidated in violation of the Trade Court's preliminary injunction, the Trade Court did not abuse its discretion in declining to exercise its equitable authority to void liquidations that did not result in injury to Star Pipe. That Star Pipe suffered no injury is further emphasized by Star Pipe's failure to "move[] the [Trade Court] to take any action in response to the liquidations." J.A. 32 n.18.

# United States Court of Appeals
# for the Federal Circuit

_____

**STAR PIPE PRODUCTS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2019-2381

_____

Appeal from the United States Court of International Trade in No. 1:17-cv-00229-MAB, Judge Mark A. Barnett.

_____

REYNA, *Circuit Judge*, concurring-in-part and dissenting-in-part.

I cannot join my colleagues in the majority opinion, which I find both erroneous and unfortunate. The error lies in a clear misapprehension of this court's precedent. And, unfortunately, this precedential opinion casts further confusion on an area of trade law that we in past decisions have bemoaned to lack clarity and predictability. But instead of putting the proverbial cart back on a straight path, we have driven it further into the bog.

I disagree with the majority's conclusion that Commerce could properly find Star Pipe's joint restraint kits to be subject to the steel threaded rods anti-dumping duty order without considering the characteristics of the kit as a

whole.  Because both the order and its history were silent as to whether the order was intended to encompass the components of mixed media products, Commerce was required under its own regulations to consider the factors set forth in 19 C.F.R. § 351.225(k)(2) in determining whether the kit's steel threaded rod components should be considered individual "subject merchandise" "products" in the context of the kit as a whole.  Our decision in *Mid Continent Nail* did not absolve Commerce of that obligation.  Thus, with respect to the majority opinion on Commerce's scope ruling, I dissent.

I

The majority's reasoning proceeds from a flawed assumption: namely, that when a party seeks a scope ruling under 19 C.F.R. § 351.225 as to whether a "particular product" falls within the "subject merchandise" described in a duty order, the "product" to be compared with the "subject merchandise" is always the individual component of the kit rather than the kit as a whole.  Under this reasoning, the importer of an IKEA-type unassembled bookshelf with two steel threaded rod ("STR") components has no basis for avoiding Commerce's duty order, even though the importer of an assembled shelf with the same components may very well escape the same order.  *See, e.g.*, *MacLean Power, L.L.C. v. United States*, 359 F. Supp. 3d 1367, 1372 (Ct. Int'l Trade 2019).  Indeed, under the majority's reasoning, the unassembled shelf is legally indistinguishable from a package of assorted rods and nails that contains 100 STRs and five nails.  All mixed media imports are treated as aggregations of "products" for which Commerce must assess individual duties, regardless of how peripheral a given component is to the kit as a whole.

That was not Commerce's assumption when it issued the anti-dumping duty order at issue here in 2008.  Nor was it the expectation of importers or domestic manufacturers.    Rather,   the   traditional   starting   point   of

Commerce's mixed-media analysis was the question of whether the kit or its components should be treated as the "product" for comparison to the "subject merchandise." Our decision in *MCN* acknowledged this:

> This case presents the question of whether otherwise-subject merchandise (nails) that is packaged and imported together with non-subject merchandise (assorted household tools) as part of a so-called "mixed media" item (a tool kit) is subject to an antidumping order that in terms covers the included merchandise, and makes no exception for mixed media items. Commerce has historically treated the answer to this question as depending on whether the mixed media item is to be treated as a single, unitary item, or a mere aggregation of separate items.

*Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1298 (Fed. Cir. 2013) ("*MCN*"). This approach was consistent with the overall purpose of scope rulings, namely to assess whether a given product falls within the realm of what a duty order was intended to cover and whether the product in its imported form constitutes an attempt to circumvent the literal language of the order. *See* 19 C.F.R. § 351.225(a). Where the face of a duty order is silent on whether and when it encompasses individual components of a mixed media product, Commerce must resolve that ambiguity through its established protocols for scope inquiries.

Under Commerce's own regulations, where a scope inquiry raises an issue not addressed by the face of the order, Commerce turns first to the regulatory history of the order and investigation for guidance on the intended scope of the order. Where those sources provide no "dispositive" answer, Commerce has turned to—and indeed has required itself to consider—a set of practical, fact-based factors relating to the characteristics of the product and the nature

of its commercialization. This two-step process of analyzing the so-called (k)(1) and (k)(2) factors is set forth in 19 C.F.R. §§ 351.225(k)(1) and (k)(2):

> [I]n considering whether a particular product is included within the scope of an order or a suspended investigation, the Secretary will take into account the following:
>
> (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.
>
> (2) When the above criteria are not dispositive, the Secretary *will further consider*:
>
> > (i) The physical characteristics of the product;
> >
> > (ii) The expectations of the ultimate purchasers;
> >
> > (iii) The ultimate use of the product;
> >
> > (iv) The channels of trade in which the product is sold; and
> >
> > (v) The manner in which the product is advertised and displayed.

19 C.F.R. § 351.225(k) (emphasis added).

Nothing in *MCN* suggests that the court intended to exempt mixed media inquiries from this codified analysis. The court instead recognized in *MCN* that when a final duty order does not explicitly address whether and when mixed media items are included, the order is ambiguous on that question, such that Commerce has the authority to interpret the order as excluding mixed media items in a scope ruling. 725 F.3d at 1301–02. The court further required Commerce, in conducting that interpretive inquiry, to consider the (k)(1) materials in assessing whether a component's inclusion in a mixed media item takes it outside the

scope of the order.  *Id.* at 1302.  When the (k)(1) materials are silent, the court opined that "a presumption arises that the included merchandise is subject to the order."  *Id.* at 1304.

This "presumption" in *MCN* does not render otherwise silent (k)(1) materials "dispositive" of a scope inquiry.  The fact that the court left room for Commerce to find exclusion in such situations means that when the (k)(1) materials are silent as to mixed media, they are not "dispositive" of whether an order that is facially silent on mixed media encompasses a given mixed media product.  Commerce is therefore obligated under the plain text of § 351.225(k) to consider the (k)(2) factors with respect to the mixed media product.  This includes consideration of how the physical characteristics of the kit, the expectations of its consumers, its intended use, and its channels of trade differ from that of STRs.  This has been Commerce's standard practice under its regulations, and *MCN* does not vitiate that practice.

II

Contrary to Commerce's suggestion, this court's statement in *MCN* that the agency "*may* . . . rely on the (k)(2) factors" in determining whether the presumption of inclusion is overcome does not override the express regulatory requirement that Commerce "*will* further consider" those factors whenever the (k)(1) materials are not dispositive.  *Compare MCN*, 725 F.3d at 1305, *with* 19 C.F.R. § 351.225(k)(2).  In accepting Commerce's position, the majority renders the *MCN* presumption un-rebuttable by the interested parties.  Under the majority's holding, Commerce alone wields the prerogative of seeking to overcome the *MCN* presumption.  Even though the rationale underlying the interpretive framework in *MCN* was rooted in the regulated parties' right to fair notice, *see* 725 F.3d at 1300, the majority's decision precludes affected importers from compelling Commerce to consider the same factors it had previously considered in a scope analysis so long as

Commerce, in its "discretion," declines to "issue clear guidance" defending an approach for doing so.  Slip. Op. 13–14. The fact that Commerce has decided to throw in the towel on the mixed media exclusion here (after its failed efforts to defend its prior mixed media approaches in court) essentially means that all mixed media items containing STR automatically fall under the scope of the STR antidumping duty order, in clear incongruity with Commerce's interpretive practice at the time it issued its order.

The majority contends that importers never had a legitimate expectation of a fact-based (k)(2) analysis even before *MCN* because Commerce had ignored the factors in the past.  This is incorrect.  The cases cited by the majority for this position are inapposite.  In *Walgreen*, the (k)(1) materials were not silent on mixed media: the I&D memo expressly stated that "all subject merchandise—cut-to-length tissue paper—is subject to this proceeding, *whether or not it is sold or shipped with non-subject merchandise.*" *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010) (emphasis added). Commerce was not obligated to consider the (k)(2) factors because the (k)(1) materials were "dispositive."  The same is true in *Texsport*, in which Commerce "found it unnecessary to address the four-additional criteria" because the (k)(1) materials clearly defined the product at issue.  *Recommendation Memo—Final Scope Ruling on the Request by Texsport for Clarification of the Scope of the Antidumping Duty Order on Porcelain–on–Steel Cooking Ware from the People's Republic of China*, U.S. Dep't of Commerce Memorandum from Richard Moreland, Director, Office of Antidumping Compliance, to Joseph A. Spetrini, Deputy Assistant Secretary for Compliance, Scope Inquiry No. A–570–506, at 3 (Aug. 8, 1990) ("*Texsport*").  Again, stated differently, because the (k)(1) factors were dispositive, it was not necessary for Commerce to address the (k)(2) factors. However, had the analysis of the (k)(1) factors not been

dispositive, it would have been necessary for Commerce to review the (k)(2) factors.

In contrast, as Star Pipe asserted in its briefing before both Commerce and this court, there is a considerable body of scope rulings on the "Pencils Order," in which Commerce repeatedly relied on the (k)(2) factors in assessing whether various mixed media items fell within the scope of a duty order that was silent on mixed media. *See* Appellant's Br. 30–31; *see also* INTERNATIONAL TRADE ADMINISTRATION, CASED PENCILS FROM THE PEOPLE REPUBLIC OF CHINA, https://legacy.trade.gov/enforcement/operations/scope/country/china/products/prc-cased-pencils-ad.asp ("Pencils Order Rulings"). For example, Commerce determined that a 10-piece vanity set including two pencils was not subject to the Pencils Order because the set as a whole was physically comprised of components other than writing instruments and its purchasers bought the product primarily for purposes other than writing. *See Final Scope Ruling—Antidumping Duty Order on Certain Cased Pencils from the People's Republic of China (PRC)— Request by Creative Designs International, Ltd.*, A-570-827 (Dep't of Commerce Feb. 9, 1998). Applying similar analyses, Commerce determined that the following mixed media products also fell outside the scope of the duty order: (1) a tote bag of various fashion items including pencils; (2) a "color set" of markers, pencils, crayons, and paper in a portable plastic storage case; (3) a compass and pencil set; and (4) a Valentine's card set with pencils. *See* Pencils Order Rulings.

Although, as the majority notes, this court concluded in *Walgreen* and *MCN* that these rulings were "ad hoc" and "did not set forth a bright line rule for determining whether imports should be analyzed as 'mixed media' sets, or as

combinations of products,"[1] Commerce did not raise, and we did not consider, whether the Pencils Order Rulings evinced a consistent practice by Commerce of considering the (k)(2) factors in mixed media analysis when the order and (k)(1) materials are silent. *Walgreen*, 620 F.3d at 1355–56; *see also MCN*, 725 F.3d at 1305. Indeed, in light of the explicit language in its regulation, there was little question at the time that the (k)(2) factors were mandatory considerations in that context.

Thus, pursuant to both Commerce's past practice and the plain terms of its own regulations, Commerce was obligated in this case to apply the (k)(2) factors to the joint restraint kits in determining whether the kits were subject to the STR order. Because Commerce plainly neglected that obligation here, I dissent.

I concur with the majority that the retroactive liquidation issue in this case is moot.

---

[1]    The majority renews a criticism by this court that Commerce's analytical framework for scope rulings lacks clarity or predictability. The majority thus joins prior calls by this court urging Commerce to establish a bright line rule that would effectively resolve scope questions of the trade community in one fell swoop. Slip Op. at 14 n.6 (citing *MCN*, 725 F.3d at 1306). This court, however, has not offered a solution or otherwise described what this bright line test should look like. Commerce, to its credit, is seeking to codify an analytical framework the draft of which, in my view, looks strikingly similar to the (k)(2) factors. *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49472, 49497 (Dep't of Commerce Aug. 13, 2020).